UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PT RAHAJASA MEDIA INTERNET,

                Petitioner,

-against-

Telecommunication and Informatics Financing Provider and Management Center, Directorate General of Post and Information Administration, Ministry of Communication and Information, Republic of Indonesia,

                Respondent.

Civil Action No.: 20-11035

**PETITION TO CONFIRM FOREIGN ARBITRATION AWARD**

Petitioner PT Rahajasa Media Internet [hereinafter "Petitioner" or "Rahajasa"], by and through its attorneys, Law Office of Bridget Butler, Esq., for its petition to confirm a foreign arbitration award, alleges as follows:

## THE PARTIES

1. Petitioner Rahajasa is an Indonesian limited liability company domiciled at Graha Darnelis, 2nd Floor, J. Amil No. 7 Pejaten Barat, Jakarta, 12510, Indonesia. Rahajasa is organized under the laws of the Republic of Indonesia. Rahajasa is an internet service provider that was founded in 1994 and it provides high speed fiber optic internet service to condominiums and apartments in Indonesia.

2. Respondent Telecommunications and Informatics Financing Provider and Management Center, Directorate General of Post and Information Administration, Ministry of Communication and Information, Republic of Indonesia [hereinafter "Respondent" or "Agency"] is located at Wisma Kodel Building, 6th Floor, Jalan HR Rasuna Said Kav B4,

Jakarta. Among other things, Respondent contracts with private companies for telecommunication service projects. Respondent is a government agency in the Republic of Indonesia.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Federal Arbitration Act, 9 U.S.C. § 201, *et seq.*

4. Under 9 U.S.C. §§ 203 and 207, this Court has original jurisdiction over this action, which seeks to confirm a foreign arbitration award falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards [hereinafter the "New York Convention"] of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.

5. Article I of the New York Convention provides that it "shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than a State where the recognition and enforcement of such awards are sought." Presently, Rahajasa is seeking confirmation and enforcement of an arbitral award which was entered in the arbitration between Rahajasa and the Agency [hereinafter "Award"] made in the Republic of Indonesia, which is a "State" and signatory to the New York Convention, in a federal district court in the United States, which is also a "State" and a signatory to the New York Convention.

6. This Court may exercise personal jurisdiction over Respondent because Respondent has property located in this District, namely funds located in two separate banks operated by the the Republic of Indonesia, in Manhattan: (1) Bank Rakyat Indonesia, 140 Broadway, 36th Floor, New York, New York 10005 ["BRI"]; and (2) Bank Negara Indonesia, 55 Broadway, 5th Floor, New York, New York 10006 ["BNI"]. Both banks are in this

District. Respondent also conducts financial transactions, clearing through the Federal Reserve Bank of New York, in U.S. dollar denominated transactions.

7. This District is also the proper venue, under 28 U.S.C. § 1391(b)(3), because of the financial institutions owned and operated by Respondent, within the District, give rise to the District's personal jurisdiction over Respondent.

## FACTUAL BACKGROUND

8. On November 12, 2010, Rahajasa made a job tender to gain a government contract to implement mobile internet access service centers in certain Indonesian districts. Rahajasa was chosen as the successful bidder, subsequently entering into a commercial contract with Respondent to provide the mobile internet access service centers in Maluku and North Maluku, a project known as "MPLIK Work Package 19".

9. Rahajasa made subsequent job tenders for other projects which also became successful bids. The parties signed, in total, 5 commercial agreements: MPLIK Package 1 Agreement, JALIN WIFI Package 2 Agreement, Desa Pinter Package 5 Agreement, JALIN WIFI Package 7 Agreement, and the MPLIK Package 19 Agreement. All these commercial contracts include Rahajasa's commitment to implement KPU/USO Program Internet Access Services, in different areas throughout Indonesia.

10. The entirety of the work is referred to as "KPU/USO Program Internet Service Work". Rahajasa participated in five public auctions and then at each one of them Rahajasa was declared the auction winner as confirmed in five separate letters from Respondent, representing confirmed agreements to contract for the five separate projects. These auctions were conducted starting in November 2010 through December 2011. Subsequent to each and every confirmation letter from Respondent, the parties bound themselves in KPU/USO

Program Internet Service agreements to regulate the internet service work for the KPU/USO Program. The legal relationship between the parties is regulated by Article 1338 of the Civil Code of Indonesia.

11. The entire value of Rahajasa implementing the KPU/USO Program Internet Service, after value added tax, in accordance with the KPU/USO Program Internet Service Agreement was agreed to be IDR 314,979,842,540, which is equivalent to $22,304,289.61. Each of the five separate agreements included corresponding values of the work Rahajasa would implement and the Respondent would pay to Rahajasa, in exchange.

12. Each of the five agreements also contained two main stages of implementation, including a pre-operational work stage and an operational stage. Each agreement contained timelines for completion of both stages. Each of the five agreements contained provisions for the service to be provided in 48 months and a general provision that the contract became effective from its signing until the deadline for operational work.

13. The five agreements included provisions that required Rahajasa to: (1) build facilities and infrastructure to support a KPU/USO Program Provision Works, in accordance with certain technical specifications and images, included in the KPU/USO Internet Service agreement, as well as (2) provide internet services to Respondent. Respondent was then obligated to pay for those services.

14. Rahajasa fulfilled its obligations to complete the pre-operational work stage in 2012 and submitted proofs to Respondent, in the form of functional and integrity test results. Respondent accepted these proofs from Rahajasa and issued the company an operational permit: "Operational Permit for the Provision of an Internet Access Service Center for the KPU/USO Sub district" for the Maluku and North Maluku provinces. Upon receiving this

permit, Rahajasa began the operational stage, under the MPLIK Work Package 19, providing internet service, from August 16, 2013 through November 15, 2014, in accordance with the relevant agreement.

15. Rahajasa also carried out the pre-operational stage requirements, pursuant to the other four agreements. This primarily consisted of Rahajasa procuring the necessary assets, as well as, mobilizing facilities and infrastructure. Rahajasa followed up with Respondent, reporting on its execution of all the necessary tasks.

16. Then on February 12, 2014, Rahajasa received a letter from Respondent announcing a postponement of payment for Rahajasa's work performed, until the Indonesian Parliament issued a budget approval that allowed for such payment. In this letter, the Respondent claimed that it "had not been able to realize Work Performance Payment". This written acknowledgment of Respondent's inability to perform on the agreements between the parties, led Rahajasa to request an audience with the Minister of Communication and Information of the Republic of Indonesia ("Minister"), to discuss the problem. On December 23, 2014, Rahajasa representatives met with this Minister with the intention of resolving the contract dispute.

17. In February 2015, Rahajasa sent a letter to the Minister seeking written confirmation that the implementations of the five projects would continue. Rahajasa also asked for payment for its work already performed, which it was entitled to. In the following months Respondent sent three separate letters to Rahajasa, starting on March 3, 2015, and then again on June 8, 2015, and January 6, 2016, expressing in each one, the intent to no longer carry out any obligations to Rahajasa, under the comprehensive KPU/USO Program Internet Service Agreement.

18. After deliberations, which included meetings and Rahajasa sending multiple correspondence to Respondent seeking payments, in accordance with the contracts, as well as the reimbursement of costs, Rahajasa sent Respondent a request for dispute resolution for the KPU/USO Program. The parties agreed to engage in formal settlement negotiations. From August 2016 through February 2017, the parties deliberated a total of eight separate times.

19. During this deliberation period, the parties agreed to allow an independent third-party accountant KAP Heliantono & Partners ("Expert") to verify and determine the proper amount of damages, ie, monies, owed by Respondent to Rahajasa, under the contract terms. The parties agreed to be bound by the calculations of the Expert. The Expert calculated the principal amount of Rahajasa's receivables, as well as, lost income and other costs and expenses.

20. While the parties agreed to accept the Expert calculations, the Indonesian Audit Board to the Ministry of Communication and Information ("Audit Board") intervened to stop the deliberations by raising objections to the Expert calculations and the overall deliberations of the parties, because: (I) there was a disagreement over the value of compensation for the KPU/USO Program Internet Service Agreement which Respondent could pay Rahajasa, primarily with regard to the interest and penalties the bank, which provided Rahajasa capital for construction of the KPU/USO Program Provision Work, may charge; (II) The Audit Board also objected to the exchange rate differences between the U.S. dollar and the Indonesian rupiah; (III) The Audit Board also pointed out that there was no formal agreement between the parties about the status of assets beyond the payment to Rahajasa for construction works and (IV) Finally, the Audit Board also objected to the absence of a formal agreement, between the parties, regarding the termination of the overall contracts

upon Rahajasa's completion of the pre-operational construction stages of each project agreement.

21. With the rejection of the Audit Board, the parties then proceeded to pursue arbitration, pursuant to their agreements, through BANI, ie, the Indonesian National Board of Arbitration. See Exhibit A (Arbitration Agreement)[1]. On March 17, 2017, Rahajasa sent Respondent a written notice of dispute resolution through BANI.

## THE ARBITRATION AWARD

22. The parties both voluntarily participated in the BANI proceedings, with Respondent stating preferences for a specific arbiter, and answering Rahajasa's application. Respondent fully submitted to the arbitration process.

23. The tribunal rendered its decision on July 27, 2017, granting Rahajasa's applications and finding Respondent in default of all five of the relevant agreements; ordering:

(A) Respondent to pay Rahajasa, IDR 205,138,307,244, the equivalent, today, of $14,540,941.72, for implementing the KPU/USO internet service;

(B) Respondent to pay the interest charges and fines directly to PT Bank Pembangunan Daerah Jawa Barat ("Bank BJB"), the bank which financed the KPU/USO Program Internet Service Provision Agreement, totaling IDR 15,742,182,401, the equivalent, today, of $1,115,862.56;

(C) Respondent to pay Rahajasa the difference in value of the U.S. dollar exchange rate against the Indonesian Rupiah currency, on the financing of the KPU/USO

---

[1] Exhibit A includes excerpts of the foremost general contract the parties executed, to commence the initial Maluku Province and North Maluku Province project and the relevant general contract provision regarding dispute resolution.

Program Internet Service Provision, totaling IDR 4,785,479,783, the equivalent, today, of $ 339,212.03;

(D) Both Rahjasa and the Respondent to pay one half each of the costs of the BANI arbitration case administration; and

(E) Declaring that the Arbitration Award is final and binding against both parties. *See* Exhibit B.

24. In rendering its decision, the BANI arbitrators calculated a rate of interest equivalent to 16.88% against the Respondent, in determining the amounts owed by Respondent directly to the Bank BJB, for interest and penalties owed to Bank BJB, on Rahajasa's defaulted loan.

25. The BANI arbitrators also ordered, in accordance with Indonesian law and the BANI arbitration rules, that this Award must be registered, by the BANI clerk, at the South Jakarta District Court within the given time period. The Award was so registered on August 15, 2017, at the South Jakarta District Court, in accordance with the law, including Article 59 of the Indonesian Arbitration Law. The Respondent had 30 days from that registration day to make any attempts to annul it or otherwise appeal. The Respondent never did so. In September 2017, the Award became final and binding.

26. Respondent, however, did not proceed to voluntarily pay Rahajasa, in accordance with the Award. On March 26, 2018, Rahajasa Director Roy Rahajasa Yamin, made a formal application for an order of execution, on the Award, at the South Jakarta District Court. *See* Exhibit C. The court has never rendered a decision on that application. Mr. Yamin has made formal requests on the application, in the past year, with no success.

27. In 2019, Rahajasa was forced into an involuntary bankruptcy, by Bank BJB, due to Rahajasa's defaults on the KPU/USO Program Internet Service Provision loan agreement, which were a direct result of Respondent's failure to honor the underlying contractual agreements to pay Rahajasa. A receiver was appointed, on behalf of Bank BJB, to oversee various assets of Rahajasa, including two items of real property which had been offered as collateral in the relevant loan agreements. Rahajasa company accounts were frozen by the Indonesian bankruptcy court, which appointed a receiver to control Rahajasa's company assets. The collateral real property was seized from Rahajasa and sold at public auction. The receiver for Bank BJB is still in possession of Rahajasa company assets to cover the remaining debt. The Award is outside the scope of the receiver's possession and control.

28. The bankruptcy proceedings have created a very difficult situation for Rahajasa, making it impossible for the company to pursue enforcement of the Award outside of Indonesia, for over one year. Respondent has still refused to pay on the Award to Rahajasa. Rahajasa's application for an order of execution is still pending, since March 26, 2018. Rahajasa has made repeated inquiries with the court, regarding the status of its application for the order of execution, with no success. Rahajasa's financial status was destroyed by the Respondent's failure to pay on the Award, and the subsequent involuntary bankruptcy.

**FIRST CLAIM FOR RELIEF**
(For Confirmation of the Foreign Arbitration Award under the Convention)

29. Rahajasa repeats and realleges the allegations contained in paragraphs 1 through 28 of the Petition as though fully set forth herein.

30. Rahajasa is entitled to the confirmation of the BANI Arbitration Award under the Convention, to which both the United States and the Republic of Indonesia are signatories.

This case presents no grounds for refusal of recognition and enforcement of the Award, as specified in the Convention.

31. A judgment should be entered in favor of Rahajasa and against Respondent Agency in the approximate amount of $14,880,153.75, depending on the exact spot exchange rate between the Indonesian Rupiah and the U.S. dollar; on the date judgment is entered.

32. The judgment should also include prejudgment interest, in the amount which compensates Petitioner Rahajasa for Respondent's use of its funds from the first date of breach, March 3, 2015, through the date of judgment, and at the same rate of 16.88% the BANI arbitrators ordered against Respondent, in calculating the amounts of interest and penalties owed by Respondent directly to Bank BJB.

WHEREFORE, Petitioner Rahajasa respectfully requests that judgment be entered confirming the Award and quantifying it into an exact U.S. dollar equivalent as of the date of judgment and awarding it, along with prejudgment interest from the date of breach, March 3, 2015, reasonable attorney's fees and costs for bringing this action, as well as, any further relief the Court deems just and proper.

Dated: December 29, 2020  
      New York, New York

Respectfully Submitted,

LAW OFFICE OF BRIDGET BUTLER, ESQ.

By: */s/ Bridget Butler*  
    Bridget Butler  
    800 Third Avenue, 28th Floor  
    New York, New York 10022  
    Tel: (917) 426-3630  
    Fax: (212) 292-3801

*Attorneys for Petitioner*