**EXHIBIT B2**

(Arbitration Award)

Considering that the **RESPONDENT in its answer** dated 23 May 2017 is as follows:

That **RESPONDENT** rejects all arguments put forward by **APPLICANT,** except for those things that have been expressly acknowledged by **RESPONDENT** in this answer,

## I. INTRODUCTION

That RESPONDENT and APPLICANT have signed a cooperation agreement for the provision of Internet Service Services for the KPU/USO Program as follows:

a. Agreement on Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Package 19 in Maluku and North Maluku No./ADD-PKS/BP3TI/KOMINFO/07/2011 dated 25 July 2011 and the second amendment based on Agreement No.69/PKS-ADD/BP3TI.KOMINFO/12/2011 dated 5 December 2011 (hereinafter referred to as the **"MPLIK Package 19 Agreement"** ), **(EXHIBIT T-1)**

b. Agreement on Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Package 1 in Nangroe Aceh Darusalam No.10/PKS/KOMINFO/12/2011 dated 5 December 2011 which has been amended based on Agreement No.10/PKS -AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012 (hereinafter referred to as **"MPLIK Package 1 Agreement"), (EXHIBIT T-2)**

c. Agreement for the Provision of Public Access Wifi Internet Services for KPU/USO Regency (JALIN KPU/USO) Work Package 2 No.31/PKS/KOMINFO/12/2011 dated 30 December 2011 which has been made the first amendment based on Agreement No.31/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012 and the second amendment based on Agreement No.31/PKS-AMD.2/BP3TI/KOMINFO/12/2014 dated 15 December 2014 (hereinafter referred to as **"JALIN WIFI Package 2 Agreement"), (EXHIBIT T-3)**

d. Agreement for the Provision of Public Access Wifi Internet Services for KPU/USO Regency (JALIN KPU/USO) Work Package 7 No.36/PKS/KOMINFO/12/2011 dated 30 December 2011 which has been carried out the first amendment based on Agreement No. 36/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012 and the second amendment based on Agreement No.36/PKS-AMD.2/BP3TI/KOMINFO/12/2014 dated 15 December 2014 (hereinafter referred to as **"JALIN WIFI Package 7 Agreement"), (EXHIBIT T-4)**

e. Agreement for Provision of Rural Telecommunication and Informatics Access Services KPU/USO (Upgrading Desa Pinter) Work Package 5 in Maluku No.42/PKS/KOMINFO/1/2012 dated 5 January 2012 which has been amended based on Agreement No.42/PKS-AMD/BP3T!/KOMINFO/11/2012 dated 14 December 2012 (hereinafter referred to as **"Desa Pinter Package 5 Agreement"), (EXHIBIT T-5)**

All of the aforementioned agreements, hereinafter referred to as the "**KPU/USO Program Internet Service Agreement**".

That as a result of the suspension of the entire KPU/USO program because the multi-year contract extension permit was not approved by the Ministry of Finance of the Republic of Indonesia, a dispute has arisen between APPLICANT and RESPONDENT. Regarding the dispute that occurred, deliberation efforts have been made between RESPONDENT and APPLICANT to resolve the dispute by appointing an Independent Verifier from the Public Accounting Firm Heliantono &

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari 05129931866

Partners.

That the deliberation effort to resolve the dispute was unsuccessful because there were several things that the RESPONDENT and APPLICANT could not agree on, namely:

a. Bank interest or fines and the difference in the exchange rate of the US dollar against the rupiah, on the value of compensation for the termination of the implementation of the KPU/USO Program Internet Service Agreement;
b. The ownership status of the KPU/USO Program Internet Service Assets and the costs incurred and/or the condition of the assets being handed over,
c. Termination of the KPU/USO Program Internet Service Agreement.

That in implementing the MPLIK Package 19 Agreement, the MPLIK Package 1 Agreement, the JALIN WIFI Package 2 Agreement, the JALIN WIFI Package 7 Agreement, and the Desa Pinter Package 5 Agreement, RESPONDENT has made an advance payment to APPLICANT in the total amount of Rp. 47,246,976,379 (EXHIBIT T -6) and the entire advance must be returned by the APPLICANT to the RESPONDENT in accordance with the provisions stipulated in the agreement.

## II. IN THE MAIN CASE

That before the RESPONDENT responds to the Request for Arbitration submitted by APPLICANT, the RESPONDENT will first state the following matters.

### A. Position of RESPONDENT

1. That RESPONDENT is a Public Service Agency (BLU) based on Article 3 paragraph (1) and (2) of the Government Regulation of the Republic of Indonesia Number 23 of 2005 in conjunction with PP No. 74 of 2012 concerning Financial Management of Public Service Agencies, which reads:
**Article 3 paragraph (1):**
*"BLU operates as a work unit of state ministries/institutions/regional governments for the purpose of providing public services whose management is based on the authority delegated by the parent agency concerned"*
**Article 3 paragraph (2):**
*"BLU is part of the means of achieving the goals of the state ministries/institutions/regional governments and therefore the legal status of the BLU is not separated from the state ministries/institutions/regional governments as the parent agency."*

Based on this, the Ministry of Communication and Information Technology of the Republic of Indonesia is also responsible for public services carried out by **RESPONDENT**, which in this case is represented by the Commitment Making Officer of the Telecommunication and Information Technology Center (BTIP), the Directorate General of Post and Telecommunications based on the Decree of the Minister of Communication and Informatics R.I. Number:

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020.

Dian Lestari

01/KEP/M.KOMINFO/1/2010 concerning the Appointment of Budget User Proxy, Commitment Making Officer, Payment Order Issuance Officer, Receiving Treasurer and Expenditure Treasurer in the Ministry of Communication and Informatics for Fiscal Year 2010; **(EXHIBIT T-7)**

2. That based on Article 68 paragraph (3) Law No.1 of 2004 concerning State Treasury which reads:
*"The financial development of the Central Government Public Service Agency is carried out by the Minister of Finance and technical guidance is carried out by the minister who is responsible for the government sector concerned",* **(EXHIBIT T-8)**

3. That based on Article 68 paragraph (3) Law No. 1 of 2004 concerning State Treasury, all uses of the **RESPONDENT** budget are subject to the provisions or policies of the Ministry of Communication and Information Technology of the Republic of Indonesia as the **RESPONDENT**'s Technical Advisor and the Ministry of Finance of the Republic of Indonesia as the **RESPONDENT**'s Financial Advisor;

4. That on 20 May 2015, the Minister of Communication and Information Technology of the Republic of Indonesia issued a Letter of Order Number 418/M.KOMINFO/KP.01.06/05/2015 which appointed the Acting Director of the Telecommunication and Information Technology Provider and Financing Center; **(EXHIBIT T-9)**

5. That with the existence of this Order, there has been a change in the organizational structure of **RESPONDENT** based on the Regulation of the Minister of Communication and Information Technology of the Republic of Indonesia Number 10 of 2013 concerning the Organization and Work Procedure of the Telecommunication and Information Technology Provider and Management Center; **(EXHIBIT T-10)**

6. That with the change in the RESPONDENT's organizational structures, the **RESPONDENT**'s <u>authority to carry out reconciliation has been revoked and therefore RESPONDENT can no longer carry out the reconciliation process for Service Provider invoices *in casu* APPLICANT</u>: and

**B. Facts about the existence of the BPK-RI LHP concerning the Work of PLIK and MPLIK and the RESPONDENT Financial System**

7. That the PLIK and MPLIK work packages have been examined dated 3 January 2014 in the LHP Number: 07/SV-XVI/01/2014 regarding the Audit Result Report on the Provision of PLIK and MPLIK Services at **RESPONDENT** in Jakarta and North Sulawesi, LHP Number: 08/S/V-XVI/01/2014 regarding the Audit Result Report on the Provision of PLIK and MPLIK Services at **RESPONDENT** in Jakarta and North Maluku, and LHP Number: 09/S/V-XVI/01/2014 regarding the Audit Result Report on the Provision of Services PLIK and MPLIK at **RESPONDENT** in Jakarta and Bangka Belitung Islands, **(EXHIBIT T-11)**

8. That of the results in the LHP, several problems were found, one of the important problems was: the PLIK service



I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

provider raw data log server is used as the basis for reconciliation and payment calculations was deemed to be invalid and resulted in overpayment which could potentially harm state finances,

9. That because of the findings, BPK RI gave several points of recommendation to the Minister of Communication and Information Technology, Republic of Indonesia which includes requests to evaluate and terminate payment procedures based on service provider raw data and data reconciliation and payment SOPs as well as temporarily stop payments for PLIK and MPLIK modem/server log data until testing by the Inspectorate General of the Ministry of Communication and Information is done:

10. That Article 20 paragraph (1) of Law Number 15 of 2004 regarding Audit of Management and Accountability of State Finances reads:
*"Officials are obliged to follow up on recommendations in the examination results report",*

11. That **RESPONDENT** as an official of a Government agency is obliged to follow up on recommendations from BPK-RI to evaluate SOPs for Data Reconciliation and Payment as regulated in Article 20 paragraph (1) of Law no. 15 of 2004.

12. That in Article 3 paragraph (2) Regulation of the Head of the Government Procurement Policy Agency (PerKA LKPP) Number 18 of 2014 concerning Black List in Government Procurement of Goods/Services, it is stated that: (EXHIBIT T-12)

"Providers of goods/services **are subject to sanctions on the black list if**:
(a) ...
(b)....
(s) **failing to follow up on the results of audit recommendations by the Audit Board** which resulted in losses to the State's finances... .. "

13. That in Article 4 of the PerKa LKPP it also states that inclusion in the Black List is valid for 2 (two) years on a national scale,

14. That based on this, both parties, **both APPLICANT and RESPONDENT, are obliged** to follow up on the results of recommendations from BPK-RI, especially regarding the implementation of the provisions of the SOP for Data Reconciliation and Payment that have been evaluated;

15. That with the efforts made by **RESPONDENT**, it can be said that **RESPONDENT** continues to make improvements in accordance with the direction of BPK RI in order to avoid state loss;

16. That regarding the potential for state losses, **RESPONDENT** is obliged to explain the general description of the

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestario



**RESPONDENT'**s financial system:

17. That based on Article 14 PP No. 23 of 2005 jo. PP No. 74 of 2012 regarding Financial Management of Public Service Agency which reads:

"(1) **Budget revenue originating from the APBN/APBD is treated as BLU revenue.**

(2) Income derived from services provided to the community and non-binding grants obtained from the community or other agencies constitute BLU operational income.

(3) Bonded grants obtained from the public or other agencies constitute income which must be treated in accordance with the allocation.

(4) The results of the BLU cooperation with other parties and/or other business results constitute income for the BLU.

(5) The income as referred to in paragraph (1), paragraph (2), and paragraph (4) can be managed directly to finance BLU expenditure in accordance with the RBA as referred to in Article 11.

(6) **The income as referred to in paragraph (2), paragraph (3), and paragraph (4) shall be reported as non-tax state income of ministries**/agencies or local government non-tax revenues";

18. That this provision has made it clear that the **RESPONDENT**'s financial system originates from state finances which are categorized in Non-Tax State Revenue (PNBP):

19. That based on Article 2 paragraph (1) of Law no. 31 of 1999 regarding Eradication of Corruption Crime which reads:

"Anyone who illegally does an act of enriching himself or another person or a corporation that **can harm** the state finances or the country's economy ..."

which is then explained in the following explanation which reads:

"In this provision, the word "can" before the phrase" harm to the state's finances or countrty's economy" indicates that the criminal act of corruption is a formal offense, that is, **the existence of a criminal act of corruption is sufficient when the elements of the act that have been formulated, not fulfilled with the result**;"

20. That accordingly, **APPLICANT**'s position is as a partner of **RESPONDENT** who has agreed on the cooperation of the KPU/USO Program Internet Access Services, so that **APPLICANT** is obliged to comply with the provisions of contract law and government procurement of goods/services law;

## C. Facts regarding Blocking/Assigning an asterisk (*) by DPR - R.I

21. That **RESPONDENT** will describe the facts regarding the blocking/assigning of an asterisk (*) by the House of Representatives of the Republic of Indonesia, in the next discussion.

22. That as previously explained, as a follow-up to the BPK-RI LHP, on **7 February 2014**, the House of



I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

Representatives (DPR) has sent a letter to the Ministry of Communication and Informatics R.I. regarding Submission of Decisions of the Meeting of the DPR RI Commission I; **(EXHIBIT T-13)**

23. That in the letter, there are points from the decision of the Commission I DPR RI Working Meeting, including:

a. Commission I DPR RI decided to **put an asterisk (\*)** on the budget for the PLIK and MPLIK programs in the RKA-KL of the Ministry of Communication and Information Technology Fiscal Year 2014 around **Rp. 529,257,196,000 (five hundred twenty-nine billion two hundred fifty-seven million one hundred ninety-six thousand rupiah)** until the results of the investigative audit of the PLIK and MPLIK programs are issued by BPK-RI,

b. Commission I DPR RI asked the Ministry of Communication and Informatics RI to immediately conduct a comprehensive re-evaluation of the Desa Dering and Desa Pinter Programs;

c. Commission I DPR RI decided that the digitalization program and budget in the RKA-KL of the Ministry of Communication and Information Technology R.I. Fiscal Year 2014 is postponed, until there is legal certainty, except for the Digital TV socialization program.

24. That following up the budget for **RESPONDENT** funds that were assigned an asterisk/blocked, **RESPONDENT** in good faith conveyed the conditions on 12 February 2014, with the **RESPONDENT** sending Letter Number 165A/Kominfo/BPPPTI.31/KS.01.08/02/2014 to the Main Director of KPU Program Service Providers/USO involved in programs in the **RESPONDENT** environment, regarding the delay in payment for work performance; **(EXHIBIT T-14)**

25. That on 22 May 2014, the Constitutional Court issued Decision No.35/PUU-XI/2013 which stated: **(EXHIBIT T-15)**

a) The authority of the DPR to discuss the APBN in detail is contrary to the 1945 Constitution because it contains legal uncertainty and has the potential to cause budget irregularities and corruption,

b) The authority of the DPR in assigning asterisks and blocking the budget is contrary to the 1945 Constitution because it contains legal uncertainty and must be declared conditionally constitutional as long as it is interpreted that there is no longer a deliberation process after the State Budget Bill (RUU) is promulgated into the APBN Law

26. That it is true that the Constitutional Court Decision No. 35/PUU-XI/2013 dated 22 May 2014 which stated that the DPR did not have the authority to give an asterisk (\*),

27. That the loss of the DPR's authority does not necessarily mean that the asterisk (\*) contained in the **RESPONDENT** RKA-KL is removed and the funds can be disbursed,

28. That **RESPONDENT** has made various efforts to unblock the said budget since June 2014, **(EXHIBIT T-16)**



I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

29. That the conditions for unblocking include the preparation of a Business Plan and Budget (RBA) document and on 26 March 2015, RBA of **RESPONDENT** was signed/endorsed by the Minister of Communication and Informatics R.I.; **(EXHIBIT T-17)**

30. That on 6 April 2015, there was a review note from the Directorate General of Budget, Ministry of Finance of the Republic of Indonesia.to **RESPONDENT** regarding the removal of blocking/asterisk (*) and use of the **RESPONDENT**'s RKA-K/L reserve output, **(EXHIBIT T-18)**

31. That on 14 April 2015, Public Service Agency Budget Implementation List (DIPA BLU) Excerpt for the 2015 Fiscal Year has been approved by the Ministry of Finance of the Republic of Indonesia; **(EXHIBIT T-19)**

32. That with the approval of the unblocking of asterisks (*) and the revised budget for the use of the 2015 Fiscal Year reserve output funds, the reconciliation of BANI's orders to **APPLICANT**'s work performance can be carried out. However, for payment of work performance, **APPLICANT** still requires a decision from a judicial institution that has permanent legal force (inkracht) as an attachment to the application for the opening of DIPA BLU 2015 Fiscal Year IV. Notes to the Ministry of Finance of the Republic of Indonesia.

**D. Facts About Multi-Contract Extension Permits Not Approved by the Ministry of Finance of the Republic of Indonesia.**

33. That **RESPONDENT** will describe the facts regarding the multi-contract extension license that was not approved by the Ministry of Finance of the Republic of Indonesia, in the next discussion.

34. That **RESPONDENT** has requested assertiveness and sought to apply for an extension of the multiyear contract license to the Ministry of Finance of the Republic of Indonesia in 2014,

35. That in response to the submission of **RESPONDENT**, the Ministry of Finance sent a letter dated 26 January 2015 Number: S-11/MK.2/2015 stating that the application for a multiyears contract extension cannot be considered for approval, (EXHIBIT T -20)

36. That to follow up on this matter, **RESPONDENT** has informed all the Head of KPU/USO Program through letters dated 20 February 2015 and 26 February 2015 which explain that applications for multi-year contract extensions cannot be considered for approval and have expired in 2014; **(vide EXHIBIT P-21)**

37. That **RESPONDENT** has invited all leaders/persons in charge of KPU/USO on 27 February 2015 and all attendees have signed the minutes of the meeting which basically contains the termination of KPU/USO services and the payment cannot be collected in the 2015 fiscal year; **(EXHIBIT T -22)**

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

38. That **RESPONDENT** reaffirms to all the Leaders/Head of KPU/USO Program through a letter dated 3 March 2015 which explains about the termination of all KPU/USO program service operations in 2015; **(Vide EXHIBIT P-23)**

39. That based on the description above, in connection with the termination of all KPU/USO program service operations, **RESPONDENT** will hold a Press Release, which in essence states that all KPU/USO programs are terminated and that evaluation steps and USO program redesign will be carried out in 2015; **(EXHIBIT T-24)**

40. That based on the description above, in connection with the Multi-year Contract Permit Extension which was not approved by the Ministry of Finance of the Republic of Indonesia, **APPLICANT**'s operational services must be stopped because there is no budget to pay work performance per 2015.

## E. RESPONDENT's Good Faith

41. That budget blocking and multiple contract permits that are not approved under Article 91 paragraph (1) of the Presidential Decree is a force majeure, namely something that occurs beyond the limits of the **RESPONDENT's** capacity and authority.

42. That **RESPONDENT** has made various efforts to open the budget which was previously blocked by the DPR (now KEMENKEU), and has implemented all recommendations given by BPK for the sole purpose of being able to carry out all obligations contained in the contract documents.

43. That **RESPONDENT** is in a position with good intentions wanting to settle the a quo case, however **RESPONDENT** is essentially a government agency which in carrying out actions according to its authority still has links with other government agencies,

44. That **RESPONDENT** had good intentions by asking the Arbitrator Council to appoint an independent verifier in carrying out verification as a substitute for the data reconciliation and payment process.

45. That currently **RESPONDENT** has not committed any breach of contract against **APPLICANT**;

46. That therefore, **RESPONDENT** already has good faith in the form of concrete actions to resolve this problem.

## F. Response to Request for Arbitration

## F1. RESPONDENT has not breached the promise of the KPU/USO Program Internet Service Agreement

47. That RESPONDENT firmly rejects the argument of APPLICANT which states that RESPONDENT has failed

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari


to deliver, because it is not based on the law.

48. That the Government's action to take a policy to suspend or terminate a project for the procurement of goods and services (in casu Internet Service Program KPU/USO) is a condition that the **RESPONDENT and APPLICANT** cannot predict in advance. So in this case, there was a condition of a temporary suspension of the budget for the KPU/USO Program Internet Service project because the Ministry of Finance refused to extend the multi-year permit contract for the KPU/USO Program Internet Service Project since January 2015 due to an asterisk (*) on the KPU/USO budget by the DPR-RI, then based on Article 91 paragraph (1) of the Presidential Decree, this condition is categorized as Force Majeure.

49. That with this force majeure, **RESPONDENT** is in a disadvantaged position because it cannot perform its function as a Public Service Agency ("**BLU**") through the KPU/USO Program Internet Service Project. As for the sustainability of the KPU/USO Program Internet Service project, it really depends on the State Budget, whose regulation is the authority of the Ministry of Finance.

50. That in the implementation of the KPU/USO Program Internet Service project with **APPLICANT**, **RESPONDENT** has temporarily stopped the KPU/USO Program Internet Service project in the context of implementing the Law on State Finance, so that **RESPONDENT** did not breach its promise to **APPLICANT.** When the KPU/USO Program Internet Service project is temporarily suspended due to provisions issued by the Government, then by law, **APPLICANT** must obey and comply with these provisions and may not run the project until a **RESPONDENT** order is issued to resume the project.

51. That accordingly, RESPONDENT did not breach its promise to the KPU/USO Program Internet Service Agreement so that the Arbitration Request submitted by APPLICANT is groundless and should be rejected by the Arbitration Council.

**F.2. Claims for Indemnity for the Implementation of Internet Service Work for the KPU/USO Program and Interest Compensation and Unlawful Fines**

52. That RESPONDENT firmly rejects APPLICANT's demands for compensation for the implementation of KPU/USO Program Internet Service work and compensation for interest and fines because they are not legally based.

53. That RESPONDENT firmly rejected the claim for compensation for the implementation of the KPU/USO Internet Service Program, because the project was not permanently terminated, but was only suspended due to circumstances that the parties could not predict, namely the non-approval of the contract permit extension for multi-year period by the Ministry of Finance which resulted in the Internet Service Project of the KPU/USO Program being temporarily suspended.



I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari  081299318CS

54. That RESPONDENT rejects the claim for interest compensation and fines imposed by the Bank to APPLICANT, because the compensation is the responsibility of APPLICANT and not the obligation of RESPONDENT because it is not regulated in the KPU/USO Program Internet Service Agreement.

55. That based on article 1340 of the Civil Code, the agreement made by and between APPLICANT and the Bank, may not be detrimental to the RESPONDENT.

56. That accordingly, APPLICANT's demands for compensation for the implementation of the KPU/USO Program Internet Service work as well as interest compensation and fines are groundless and should be rejected by the Arbitration Council.

**F.3. Unlawful Foreign Exchange Value Demands**

57. That RESPONDENT firmly rejects APPLICANT's claim on exchange rate differences because it is not based on law.

58. That APPLICANT argued that the difference in exchange rates between the United States Dollar and the Rupiah currency is not the responsibility of the RESPONDENT because this was not previously agreed in the KPU/USO Program Internet Service Agreement.

59. That legally, the difference between the exchange rate of the United States Dollar and the Rupiah currency is the responsibility of APPLICANT, because when APPLICANT submitted a proposal for cooperation in the provision of Internet Service Services for the KPU/USO Program to RESPONDENT, the value of the exchange rate difference was already calculated in the the cost of procuring these services.

60. That accordingly, APPLICANT's claim on the exchange rate difference between the US Dollar and the Rupiah currency is groundless and should have been rejected by the Arbitration Council.

**F.4. Unlawful Immaterial Indemnity Claims**

61. That RESPONDENT firmly rejects APPLICANT's claim for immaterial compensation because it is not based on law.

62. That as previously described, the temporary suspension of the KPU/USO Program Internet Service Project, is a condition that is beyond the RESPONDENT's estimate due to the KPU/USO budget being blocked by DPR-RI so that the Ministry of Finance did not extend the multi-year permit contract for the KPU/USO Program Internet Service Project since January 2015.

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari




63. That, therefore, RESPONDENT has not breached the promise of the KPU/USO Program Internet Service Agreement, so that APPLICANT's claim for immaterial compensation is not legally grounded.

64. That accordingly, APPLICANT's demands for immaterial compensation are not legally grounded and should be rejected by the Arbitration Council.

## III. PETITUM

That based on the foregoing matters, **RESPONDENT** requests the Arbitrator Council to issue the following decisions:

## IN THE MAIN CASE

1. Reject the **APPLICANT**'s request in its entirety;

2. Accept and grant **RESPONDENT**'s answers to the arguments;

3. Declare valid and valuable all evidentiary tools submitted by **RESPONDENT** in this case,

4. Declare that the **RESPONDENT** is not in default in the implementation of the KPU/USO Program Internet Service Agreement;

5. Rejecting **APPLICANT**'s demands for compensation for the KPU/USO Program Internet Service Implementation;

6. Reject **APPLICANT**'s demands for interest compensation and fines;

7. Reject **APPLICANT**'s demands on the value of exchange differences in the financing of Internet Service Work for the KPU/USO Program;

8. Reject **APPLICANT**'s claim for immaterial compensation;

9. Sentenced **APPLICANT** to pay all court fees.

Or

If the Arbitrator Council has a different opinion, we ask for the fairest decision (ex aquo et bono).

Considering that **APPLICANT** Submits evidentiary correspondence in the form of photocopies of letters that are matched with the originals and photocopies of letters that are not denied its correctness after being affixed with a stamp:

| Evidence No. | Document |
|---|---|
| **P-01** | 1. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Packages 19 (nineteen) in Maluku & North Maluku Number 35/PKS/KOMINFO/12/2010 dated 22 December 2010 |
| | 2. Amendments to the Agreement Letter Number: 62/ADD-PKS/BP3TI/KOM-INFO/07/2011 dated 25 July 2011 |
| | 3. Second Amendment to Agreement Letter Number: 69/PKS-ADD/BP3TI.KOM-INFO/12/2011 dated 5 December 2011 |
| | 4. General Terms of Contract (SSUK) & Special Conditions of Contract (SSKK) |
| | 5. List of Asset Details - MPLIK Package 19 |

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020.

Dian Lestari



| | |
|---|---|
| **P-02** | 1. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Package 1 (one) in Nangroe Aceh Darussalam Province Number 10/PKS/KOMINFO/12/2011 dated 5 December 2011 |
| | 2. Amendments to the Agreement Letter Number 10/PKS-AMD/BP3TI/KOM-INFO/11/2012 dated 13 November 2012 |
| | 3. General Terms of Contract (SSUK) & Special Conditions of Contract (SSKK) |
| | 4. List of Asset Details - MPLIK Package 1 |
| **P-03** | 1. Agreement Letter for the Provision of Public Access Wifi Internet Services for KPU/USO Regency (JALIN-KPU/USO) Work Package 2 (Two) Number 31/PKS/KOMINFO/12/2011 dated 30 December 2011 |
| | 2. Amendments to the Agreement Letter Number 31/PKS-AMD/BP3TI/KOM-INFO/11/2012 dated 13 November 2012 |
| | 3. Second Amendment Agreement Letter Number 31/PKS-AMD.2/BP3TI/KOM-INFO/12/2014 dated 15 December 2014 |
| | 4. General Terms of Contract (SSUK) & Special Conditions of Contract (SSKK) |
| | 5. List of JALIN WIFI Package 2 assets |
| **P-04** | 1. Agreement Letter for the Provision of Public Access Wifi Internet Services for KPU/USO Regency (JALIN-KPU/USO) Work Package 7 (Seven) Number 36/PKS/KOM-INFO/12/2011 dated 30 December 2011 |
| | 2. Amendments to the Agreement Letter Number 36/PKS-AMD/BP3TI/KOM-INFO/11/2012 dated 13 November 2012 |
| | 3. Second Amendment Agreement Letter Number 36/PKS-AMD.2/BP3TI/KOM-INFO/12/2014 dated 15 December 2014 |
| | 4. General Terms of Contract (SSUK) & Special Conditions of Contract (SSKK) |
| | 5. List of JALIN WIFI Package 7 assets |
| **P-05** | 1. Agreement Letter for Provision of Rural Telecommunication and Informatics Access Services KPU/USO (Upgrading Desa Pinter) Work Package 5 (Five) In Maluku Province Number 42/PKS/KOMINFO/1/2012 dated January 5, 2012 has been carried out |
| | 2. Amendments to the Agreement Letter Number 42/PKS-AMD/BP3TI/KOM-INFO/11/2012 dated December 14, 2012 |
| | 3. General Terms of Contract (SSUK) & Special Conditions of Contract (SSKK) |
| | 4. List of Desa Pinter Package 5 Assets |
| **P-06** | Announcement of MPLIK Package 19 auction number 04/PL-USO/MPLIK-PK19/BTIP-BLU/KOMINFO/11/2010 on 12 November 2010 |
| **P-07** | Announcement of MPLIK Package 1 auction number 05/PL-USO/MPLIK-PA-KET.1/BP3TI-BLU/KOMINFO/10/2011 on 12 October 2011 |
| **P-08** | Announcement of JALIN WIFI Package 2 auction number 05/PL-USO/JALIN-KPU/USO-PAKET.2/BP3TI-BLU/KOMINFO/10/2011 on 28 October 2011 |
| **P-09** | Announcement of JALIN WIFI Package 7 auction number 05/PL-USO/JALIN-KPU/USO-PAKET.7/BP3TI-BLU/KOMINFO/10/2011 on 28 October 2011 |
| **P-10** | Announcement of the DESA PINTER Package 5 auction number 05/PL-USO/U.DP-PA-KET.5/BP3TI-BLU/KOMINFO/11/2011 on 10 November 2011 |
| **P-11** | Announcement of MPLIK Package 19 Auction Winners number 17/PL-USO/MPLIK-PK19/BTIP-BLU/KOMINFO/12/2010 dated 13 December 2010 |
| **P-12** | Announcement of MPLIK Package 1 Auction Winners Number: 18/PL-USO/MPLIK-PA-KET.1/BP3TI-BLU/KOMINFO/11/2011 dated 8 November 2011 |
| **P-13** | Announcement of Winners of JALIN WIFI Package 2 Auction Number: 31/PL-USO/JALIN-KPU/USO-PAKET.2/BP3TI-BLU/KOMINFO/12/2011 dated 21 December 2011 |
| **P-14** | Announcement of Winners of JALIN WIFI Package 7 Auction Number: 31/PL-USO/JALIN-KPU/USO-PAKET.7/BP3TI-BLU/KOMINFO/12/2011 dated 21 December 2011 |

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari



| | |
|---|---|
| P-15 | Announcement of Winners of the DESA PINTER Package 5 Auction Number: 21/PL-USO/U.DP-PAKET.5/BP3TI-BLU/KOMINFO/12/2011 dated 27 December 2011 |
| P-16 | MPLIK Package 19 Operational Permit dated 16 August 2012 with number 1376/BP3TI.4/KOMINFO/8/2012 |
| P-17 | Letter number: 28/BTIP.1/Kominfo/1/2011 dated 12 January 2011 regarding Refunds of Work Advances for MPLIK 19 |
| P-18 | Bank BCA Request For Fund Transfer Slip dated 14 January 2014 to refund MPLIK 19 Advances |
| P-19 | BAUF No: 015/BP3TI/UJI-F/KOMINFO/04/2012, dated 18 April 2012 |
| P-20 | BAUF No 009/BP3TI/UJI-F/KOMINFO/05/2012 dated 31 May 2012 |
| P-21 | Minutes of Work Result Examination No. 18/PHP/BP3TI/KOMINFO/08/2012, dated 16 August 2012 |
| P-22 | Minutes of Handover of Work Results No. 18/STHP/BP3TI/KOMINFO/08/2012, dated 16 August 2012 |
| P-23 | BANI Decision Letter for case number 703/V/ARB-BANI/2015 |
| P-24 | Letter number 92A/RMI-RRY/DIR/IX/2013 dated 2 September 2013 |
| P-25 | Letter Number: 165A/Kominfo/BPPPTI.31/KS.01.08/02/2014 from RESPONDENT dated February 12, 2014 regarding Postponement of Payment for Work Performance of KPU/USO Program from RESPONDENT |
| P-26 | Letter Number: S.788/Kominfo/BPPPTI.31/KS.01.02/05/2014 from RESPONDENT dated 2 May 2014, regarding the Notification of Budget Allocation Still Requiring the Approval of the Indonesian Parliament |
| P-27 | Letter number 1657/KOMINFO/BP3TI.31/PW.01.08/12/2014 from RESPONDENT dated 5 December 2014 regarding Implementation of Multiyears Contracts |
| P-28 | Letter of Hearing with Minister of Communication and Information on 9 December 2014 and Agenda for Hearing with Minister of Communication and Information on 23 December 2014 |
| P-29 | Letter number: 11/RMI-RRY/DIR/II/2015 dated 16 February 2015 regarding the status of continuity of contracts and certainty of payment for the KPU/USO project |
| P-30 | Letter Number: B-170/KOMINFO/BPPPTI.31.4/KS.01.08/2/2015 from RESPONDENT dated 20 February 2015 regarding the Termination of Multi-Year Permit for the KPU/USO Program |
| P-31 | Letter Number: 179/KOMINFO/BPPPTI.31/HK.04.01/2/2015 from RESPONDENT dated 26 February 2015 regarding Confirmation of Continuity of Multi-Year Contracts for KPU/USO |
| P-32 | Letter number B-191/KOMINFO/BPPPTI.31.4/KS.01.08/3/2015 from RESPONDENT dated 3 March 2015 regarding the Termination of KPU/USO Services |
| P-33 | Letter number: 065/RMI-RRY/DIR/VI/2015 dated 8 June 2015 to RESPONDENT regarding Contract Continuity and Payment of KPU/USO Work |
| P-34 | Letter number: 003/RMI-RRY/DIR/1/2016 dated 6 January 2016 regarding the report on the Development & Completion of the KPU/USO Radnet Program |
| P-35 | Letter number: 009/RMI-RRY/DIR/I!/2016 dated 15 February 2016 to the RESPONDENT regarding the Request for Dispute Resolution for the KPU/USO Program through deliberation |
| P-36 | Minutes of deliberation between BP3TI and Radnet dated 3 May 2016 |
| P-37 | Letter number: 042/RMI-RRY/DIR/VII/2016 to RESPONDENT dated 18 July 2016 regarding Request for Dispute Resolution for KPU/USO Program through Deliberation |
| P-38 | Invitation letter from RESPONDENT number 1494/KOM-INFO/BPPPTI.31/HK.04.01/08/2016 dated 16 August 2016 & Minutes of Meeting 18 August 2016 - FIRST DELIBERATION |
| P-39 | Invitation letter from RESPONDENT number 1536/KOM-INFO/BPPPTI.31/HK.04.01/08/2016 dated 22 August 2016 & Minutes of Meeting 23 August 2016 - SECOND DELIBERATION |

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

| | |
|---|---|
| P-40 | Invitation letter from RESPONDENT number 1822/KOM-INFO/BPPPTI.31/HK.04.01/09/2016 dated 23 September 2016 & Minutes of Meeting 26 September 2016 - THIRD DELIBERATION |
| P-41 | Letter number: 068/RMI-RRY/DIR/X/2016 to RESPONDENT dated October 13, 2016 regarding the Proposed Name of the Public Accounting Firm (KAP) as an independent third party in deliberations |
| P-42 | Invitation letter from RESPONDENT number 1962/KOM-INFO/BPPPTI.31/HK.04.01/10/2016 dated 17 October 2016 & Minutes of Meeting 19 October 2016 - FOURTH DELIBERATION |
| P-43 | Letter of KAP Heliantono & Partners number 176/KAP-S/10/16 dated 20 October 2016 & number 240/KAP-EL/10/16 dated 21 October 2016 regarding submission of proposal "agreed procedures" |
| P-44 | RESPONDENT Approval Letter number 1987.A/KOM-INFO/BPPPTI.31/HK.04.01/10.2016 dated 24 October 2016 and APPLICANT Approval Letter number 069-A/RMI-RRY/DIR/X/16 dated 24 October 2016 |
| P-45 | Cover Letter of Draft KAP Report number 194/KAP-S/11/16 dated November 14, 2016 |
| P-46 | Invitation letter from RESPONDENT number 2229/KOM-INFO/BPPPTI.31/HK.04.01/11/2016 dated 25 November 2016 & Minutes of Meeting 28 November 2016 - FIFTH DELIBERATION |
| P-47 | 1. Final report of KAP dated 30 November 2016 & letter number 236/KAP-s/10/16 2. Bank Indonesia Exchange Rate on 28 November 2016 |
| P-48 | Invitation letter from RESPONDENT number 2238/KOM-INFO/BPPPTI.31/HK.04.01/11/2016 dated 29 November 2016 & Minutes of Meeting 30 November 2016 - SIXTH DELIBERATION |
| P-49 | Invitation letter from RESPONDENT number 2294A/KOM-INFO/BPPPTI.31/HK.04.01/12/2016 dated 7 December 2016 & Minutes of Meeting dated 8 December 2016 - SEVENTH DELIBERATION |
| P-50 | Invitation letter from RESPONDENT number 221/KOM-INFO/BPPPTI.31/HK.04.01/02/2017 dated 13 February 2017 & Minutes of Meeting dated 14 February 2017 - EIGHTH DELIBERATION |
| P-51 | Letter number: 009/RMI-RRY/DIR/I1/2017 dated 24 February 2017 regarding Notification of plan for dispute settlement of the KPU/USO Program Provision Agreement through the Indonesian National Arbitration Board (BANI) |
| P-52 | Tax Amnesty Certificate Number: KET-50/PP/WPJ.04/2016 dated 12 August 2016 - Tax Amnesty |
| P-53 | Letter from the Ministry of Finance of the Republic of Indonesia Directorate General of Taxes number Pem-3/WPJ.04/KP.0100/2016 dated 23 August 2016 concerning "Notification of termination of audit in the context of tax amnesty" |
| P-54 | Credit facility deed originating from Bank Jabar and Banten |
| P-55 | Bank Jabar and Banten letter number: 0196/Jkt-Comm/I/2015 dated 28 January 2015 regarding PT Rahajasa Media Internet's credit settlement |
| P-56 | Bank Jabar and Banten letter number 1618/Jkt-Comm/2014 regarding the collectability status of Radnet |
| P-57 | Radnet Deed of Establishment number 127 dated 18 November 1994 and Decree of the Minister of Justice and Human Rights of the Republic of Indonesia No. C2-4068.HT.01.01.PH.95, dated 7 April 1995 |
| P-58 | State Gazette of the Republic of Indonesia dated 27 June 1995 No. 51, Supplement No. 5325 of 1995 |
| P-59 | The latest deed of amendment to Radnet Number: 13 dated 15 December 2016 |
| P-60 | BANI Decision No. 703/V/ARB-BANI/2015 dated 30 March 2016 |

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

Considering that **RESPONDENT** submitted evidentiary correspondence in the form of photocopies of letters that are matched with the originals and photocopies of letters that are not denied its correctness after being affixed with a stamp:

| No. | Evidence | Evidence Type and Detail | Description |
|---|---|---|---|
| 1 | T-1 | Agreement Letter Number: No.35/PKS/KOMINFO/12/2010 dated 22 December 2010, the first amendment was made based on Agreement No. 62/ADD-PKS/BP3TI/KOM-INFO/07/2011 dated 25 July 2011 and the second amendment was based on the Agreement No.69/PKS-ADD/BP3TIKOM-INFO/12/2011 dated 5 December 2011 | This proves that: There is a legal relationship between the APPLICANT and RESPONDENT in the work of the KPU/USO District Mobile Internet Access Service Center MPLIK package 1 |
| 2 | T-2 | Agreement Letter No.10/PKS/KOMINFO/12/2011 dated 5 December 2011 which has been amended based on Agreement No.10/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012 | This proves that: There is a legal relationship between the APPLICANT and RESPONDENT in the work of the KPU/USO District Mobile Internet Access Service Center MPLIK package 19 |
| 3 | T-3 | Agreement Letter No.31/PKS/KOMINFO/12/2011 dated 30 December 2011, the first amendment was made based on Agreement No.31/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012 and the second amendment was based on Agreement No. 31/PKS-AMD.2/BP3TI/KOM-INFO/12/2014 dated 15 December 2014 | This proves that: There is a legal relationship between the APPLICANT and RESPONDENT in the work of providing public service and internet package 2 |
| 4 | T-4 | Agreement Letter 5 No.36/PKS/KOMINFO/12/2011 dated 30 December 2011, the first amendment was made based on Agreement No.36/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012 and the second amendment based on Agreement No. 36/PKS-AMD.2JBP3TI/KOM-INFO/12/2014 dated 15 December 2014 | This proves that: There is a legal relationship between the APPLICANT and RESPONDENT in the work of providing public service and internet package 7 |
| 5 | T-5 | Agreement Letter No.42/PKS/KOMINFO/1/2012 dated 5 January 2012 which has been amended based on Agreement No.42/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 14 December 2012 | This proves that: There is a legal relationship between the APPLICANT and RESPONDENT in the Provision of Telecommunication and Informatics Access to Villages KPU/USO Package 5 |
| 6 | T-6 | Advance Payment to APPLICANT | This proves that: the commitment of APPLICANT and RESPONDENT where APPLICANT has received an advance payment of 15% from the RESPONDENT, who has made an advance payment to APPLICANT in the amount of Rp.47,246,976,379 and the advance must be returned by APPLICANT to the RESPONDENT |
| 7 | T-7 | Government Regulation No. 23 of 2005 on Public Service Agency Financial Management | This proves that: The Ministry of Communication and Information Technology of the Republic of Indonesia is also responsible for public services carried out by RESPONDENT |

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

DIAN LESTARI

Dian Lestari 05129931866

GUB.DKI NO. 2042/2005

| 8 | T-8 | Law No. 1 of 2004 on State Treasury | This proves that: any use of RESPONDENT's budget is subject to the provisions or policies of the Ministry of Communication and Information Technology of the Republic of Indonesia as the RESPONDENT's Technical Advisor and the Ministry of Finance of the Republic of Indonesia as the RESPONDENT's Financial Advisor; |
| 9 | T-9 | Order Number 418/M.KOMINFO/KP.01.06/05/2015 Ministerial Decree Number 989 of 2016 concerning the Appointment of Civil Servants to the Position of the President Director of the Telecommunication and Information Technology Provider and Financing Center | This proves that: The appointment of the Acting Director of the Telecommunication and Information Technology Provider and Financing Center which has been amended by the appointment of the BP3TI Director has changed the BP3TI organizational structure thus eliminating the authority for calculating payments in the KPU/USO program |
| 10 | T-10 | Regulation of the Minister of Communication and Information Technology of the Republic of Indonesia Number 10 of 2013 concerning the Organization and Work Procedures of the Center for Providing and Managing Telecommunications and Informatics Financing | This proves that: There has been a change in the organizational structure of BP3TI |
| 11 | T-11 | LHP Number: 07/SN-XVI/01/2014 regarding the Audit Result Report on the Provision of PLIK and MPLIK Services to TERMOHON in Jakarta and North Sulawesi, LHP Number: 08/SN-XVI/01/2014 Concerning the Report on the Results of the Inspection of the Provision of PL1K Services and MPLIK to RESPONDENT in Jakarta and North Maluku, and LHP Number: 09/SN-XV1/01/2014 Concerning the Audit Result Report on the Provision of PL1K and MPLIK Services to RESPONDENT in Jakarta and Bangka Belitung Islands; | This proves that: It was found that PLIK and MPLIK were not in accordance with the contract so that in this case APPLICANT's work had to be stopped because of a recommendation from BPK to stop payments, therefore the recommendation had a direct impact on the implementation of reconciliation of services other than PLIK and MPLIK |
| 12 | T-12 | (PerKA LKPP) Number 18 of 2014 concerning Black List in Government Procurement of Goods/Services | RESPONDENT is obliged to follow up on the results of recommendations made by RESPONDENT, so it can be said that RESPONDENT continues to make improvements in accordance with the direction of BPK RI in order to avoid state losses |
| 13 | T-13 | DPR Letter No. AG/01106/DPR RI/111/2014 dated 7 February 2014 | This proves that: The budget for the PLIK, MPLIK and PLIK SP programs is given an asterisk (*) so that the payment for the APPLICANT's work performance cannot be made |
| 14 | T-14 | Letter Number 165A/Kominfo/BPPPTI.31/KS.01.08/02/2014 | This proves that: RESPONDENT has informed the Commission I DPR RI's decision on blocking the program budget |
| 15 | T-15 | Constitutional Court Decision No.35/PUU-XI/2013 | The DPR no longer has the authority to provide an asterisk (*), but this authority has now shifted to the Ministry of Finance of the Republic of Indonesia |
| 16 | T-16 | a. Kominfo Office Note Number 851/SJ/KU.01.01/06/2014 dated 20 June 2014 | This proves that: RESPONDENT has in good faith made |

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari



| | | | |
|---|---|---|---|
| | | b. Official Note No: 251/KOMINFO /BPPPTI.31/PR.01.08/09/2014 dated 22 September 2014 | various efforts to remove the block/asterisk (*) of the budget |
| | | c. Official Note No: 64/IJ.03.PR.01. 06/09/2014 dated 29 September 2014 | |
| | | d. Letter No: 1570/KOMINFO/BP3TI.31/PW.01.08/11/2014 dated 18 November 2014 | |
| | | e. Letter No: 1571/KOMINFO/BP3TI.31/PW.01.08/11/2014 dated 18 November 2014 | |
| | | f. Official Note No.S.061/KOM-INFO/BPPPTI.31/PR.01.08/12/2014 dated 03 December 2014 | |
| | | g. Letter No. 1622/KOMINFO/DJPPI/KU.01.02/12/2014 dated 9 December 2014 | |
| | | h. Letter Number S-2458/AG/2014 dated 15 December 2014 | |
| | | i. Official Note Number 070/KOM-INFO/BPPPTI.31/PR.01.08/12/2014 dated 16 December 2014 | |
| | | j. Official Note Number: S-1802/KOM-INFO/BPPPTI.31/PR.01.08/12/2014 dated 31 December 2014 | |
| | | k. Official Note Number: S-051 --KOM-INFO/BPPPT1.31/PR.01.08/2/2015 dated 27 February 2015 | |
| | | l. Application for RBA Review No.243/DJPPI/KU.01.01/03/2015 | |
| | | m. Notes on the results of the review on the RBA from the Directorate General dated 16 March 2015 | |
| | | n. Minutes of the RBA Discussion on 20 March 2015 | |
| | | o. Service Note No. 22/KOMINFO/IJ/PW.02.06/03/2015 dated 24 March 2015 | |
| | | p. Service Note No. 665/DJPPI/P1.04. 04/03/2015 dated 25 March 2015 | |
| 17 | T-17 | Official Note to the Minister of Communication and Informatics R.I. dated 26 March 2015 | This proves that: The Business & Budget Plan (RBA) of RESPONDENT has been approved by the Minister of Communication and Information as one of the requirements for the budget unblocking document |
| 18 | T-18 | The results of the review from the Directorate General of Budget, Ministry of Finance RI | This proves that: Directorate General of Budget, Ministry of Finance provides notes on documents submitted by RESPONDENT |
| 19 | T-19 | 2015 DIPA Approval Letter, dated 14 April 2015 mark of approval for the revision of the reserve output fund budget by the Ministry of Finance | This proves that: The removal of blocking/asterisk (*) has been approved by the Ministry of Finance |
| 20 | T-20 | Letter Number: S-11/MK.2J2015 regarding Application for Contract Extension of Multi-Year Contract dated 26 January 2015 | This proves that: RESPONDENT can only pay APPLICANT's work performance until 31 December 2014 because the multi-year contract extension permit was not approved by the Ministry of Finance of the Republic of Indonesia. |

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari



| 21 | T-21 | Minutes of Meeting dated 27 February 2015 | APPLICANT and other service providers have known that RESPONDENTS cannot make payment for work performance and for payments that are in payable status must be verified by KPA/Inspectorate General/ BPKP |
|---|---|---|---|
| 22 | T-24 | Press Release | This proves that: In 2015, all KPU/USO program services were stopped and USO program evaluation and redesign would be carried out in 2015. |
| 23 | T-25 | Additional documents | Results of the BPK-RI LHP |

Considering that subsequently **APPLICANT** submitted **Conclusions**, dated 15 June 2017 and **Additional Conclusions**, dated 20 July 2017 while **RESPONDENT** submitted **Conclusions**, dated 19 June 2017 and **Additional Conclusions**, dated 21 July 2017,

Considering, whereas in passing the decision of the Arbitral Council referring to and considering all the matters revealed in the trial as stated in the trial minutes, for expedience sake the matters that have been documented in the examination report shall not be repeated;

### REGARDING LEGAL CONSIDERATIONS

From the evidentiary tools submitted which are not refuted by the parties, the following legal facts are obtained:

I. From Exhibit P-01 to P.05 = T-1 to T-5:

That RESPONDENT and APPLICANT have signed a cooperation agreement for the Provision of Internet Service Services for the KPU/USO Program as follows:

a. Agreement on Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) **Work Package 19 in Maluku and North Maluku** No.35/PKS/KOMINFO/12/2010 dated 22 December 2010 that has been firstly amended based on Agreement No. 62/ADD-PKS/BP3TI/KOMINFO/O7/2011 dated 25 July 2011 and the secondly amended based on Agreement No. 69/PKS-ADD/BP3TI.KOMINFO/12/2011 dated 5 December 2011 (hereinafter referred to as **"MPLIK Package 19 Agreement"**);

b. Agreement on Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) **Work Package 1 in Nangroe Aceh Darusalam** No.10/PKS/KOMINFO/12/2011 dated 5 December 2011 which has been amended based on Agreement No.10/PKS -AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012/hereinafter referred to as **"MPLIK Package 1 Agreement"**);

c. Agreement for the Provision of Public Access Services for Wifi Internet Services in KPU/USO Regency (JALIN KPU/USO) **Work Package 2 in Bangka Belitung islands, Bengkulu, Jambi, Riau islands, Lampung, Riau, and South Sumatra provinces** No.31/PKS/KOMINFO/12/2011 dated 30 December 2011, the first amendment was made based on Agreement No.31/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012 and the second amendment based on

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Diana Lestari 05120931066



Agreement No.31/PKS-AMD.2/BP3TI/KOMINFO/12/2014 dated 15 December 2014 (hereinafter referred to as the "**JALIN WIFI Package 2 Agreement**");

d. Agreement for the Provision of Public Access Services for Wifi Internet Services in KPU/USO Regency (JALIN KPU/USO) **Work Package 7 in Banten, DIY, West Java, Central Java and East Java provinces** No.36/PKS/KOMINFO/12/2011 dated 30 December 2011 where the first Amendment was made based on Agreement No.36/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 13 November 2012 and the second amendment based on Agreement No.36/PKS-AMD.2/BP3TI/KOMINFO/12/2014 dated 15 December 2014 (**hereinafter referred to as the "JALIN WIFI Package 7 Agreement**");

e. Agreement for Provision of Rural Telecommunication and Informatics Access Services KPU/USO (Upgrading Desa Pinter) **Work Package 5 in Maluku** No.42/PKS/KOMINFO/1/2012 dated 5 January 2012 which has been amended based on Agreement No.42/PKS-AMD/BP3TI/KOMINFO/11/2012 dated 14 December 2012 (hereinafter referred to as "**Desa Pinter Package 5 Agreement**").

All of the aforementioned agreements, hereinafter referred to as the "**KPU/USO Program Internet Service Agreement**".

II. That APPLICANT has carried out the achievements of the Agreement which are not denied by RESPONDENT as follows:
1. Pre-operational and operational work on the MPLIK Package 19 Agreement (**vide Exhibit P-01**);
2. Pre-operational work on the MPLIK Package 1 Agreement (**vide Exhibit P-02**);
3. Pre-operational work on JALIN WIFI Package 2 Agreement (**vide Exhibit P-03**);
4. Pre-operational work on JALIN WIFI Package 7 Agreement (**vide Exhibit P-04**);
5. Pre-operational work on the DESA PINTER Package 5 Agreement (**vide Exhibit P-05**)

III. That RESPONDENT has stopped payment of the multi-year contract implementation to APPLICANT, as stated in Exhibit P-30, P-31, and P-32 (KPU/USO program termination letter from and by RESPONDENT).

IV. From Exhibit P-37 to P-49, which RESPONDENT has not denied, efforts to resolve disputes by deliberation resulted a few legal facts:
- APPLICANT and RESPONDENT agreed to the **Public Accounting Firm Heliantono & Partners** (BPK RI Partners) as the Independent Verifier and agreed on parameter verification procedures and testing of compensation claims submitted by APPLICANT to RESPONDENT.
- With verification by KAP Heliantono & Partners, an agreement was reached between APPLICANT and RESPONDENT as listed in table 5 (recapitulation of agreement dated 8 December 2016):
  ■ For the payment of the KPU/USO Program Provision Implementation Work, which will be paid to APPLICANT by RESPONDENT in the amount of Rp. 186,489,370,222 plus 10% VAT - Rp. 205,138,307,244 (two hundred and five billion one hundred thirty-eight million three hundred seven thousand two hundred and forty-four rupiah);
  ■ Eliminating APPLICANT's request regarding a reasonable profit and potential losses:

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari



**Table 5**

## MUTUALLY AGREED RECAPITULATION – 8 DECEMBER 2016

| DESCRIPTION | KPU/USO RADNET PROGRAM | | | | | Radnet & BP3TI Agreement |
|---|---|---|---|---|---|---|
| | MPLIK Package 1 | JAUN WIFI 2 | JAUN WIFI 7 | DESA PINTER 5 | MPLIK 19 | |
| **CONTRACT VALUE\*)** | 98,113,690,157 | 52,627,130,582 | 54,486,288,331 | 48,089,788,613 | 61,662,944,857 | 314,979,842,540 |
| **A** | | | | | | |
| **I** | **Construction Cost Reimbursement** | | | | | |
| 1. Direct Costs Incurred | 70,521,406,953 | 39,392,707,468 | 41,264,314,657 | 39,639,078,726 | 48,273,183,388 | 239,090,691,191 |
| 2. Direct Costs Payable | 5,817,894,000 | 2,474,206,757 | 3,202,999,951 | 299,760,000 | 9,792,340,354 | 21,587,201,062 |
| 3. Adjustment and Verification Result Findings | 741,517,687 | 235,194,820 | 274,549,695 | 416,169,032 | (6,266,797,000) | (4,599,365,767) |
| 4. KAP costs (50%) (50%) by BP3TI | 33,000,000 | 33,000,000 | 33,000,000 | 33,000,000 | 33,000,000 | 165,000,000 |
| | | | | | | |
| **II** | **Reduction Factors for Development Cost Reimbursement** | | | | | |
| 1. Advance Received | (13,379,139,567) | (7,176,426,898) | (7,429,948,409) | (6,557,698,447) | (8,408,583,390) | (42,951,796,710) |
| 2. Term Payment Received | | - | | | (26,802,359,555) | (26,802,359,555) |
| **TOTAL A (before VAT)** | 63,734,679,073 | 34,958,682,148 | 37,344,915,894 | 33,830,309,310 | 16,620,783,798 | 186,489,370,222 |
| | | | | | | |
| **B** | | | | | | |
| **1** | **Reasonable profit** | | | | | - | - |
| **11** | **Potential Losses** | - | - | - | - | - | - |
| **TOTAL B (before VAT)** | - | - | - | - | - | - |
| | | | | | | |
| **TOTAL (A+B) before VAT** | 63,734,679,073 | 34,958,682,148 | 37,344,915,894 | 33,830,309,310 | 16,620,783,798 | 186,489,370,222 |
| **VAT** | 6,373,467,907 | 3,495,868,215 | 3,734,491,589 | 3,383,030,931 | 1,662,078,380 | 18,648,937,022 |
| **TOTAL (A+B) after VAT** | 70,108,146,980 | 38,454,550,362 | 41,079,407,483 | 37,213,340,241 | 18,282,862,178 | 205,138,307,244 |

- Acknowledged by APPLICANT in its conclusion in points 143, 144, and 145 and by RESPONDENT in its conclusion in point No. 4, that the dispute settlement through deliberation was not successful because there were several things that were not agreed upon by APPLICANT and RESPONDENT, namely:

     a. Bank interest or fines and the difference in the exchange rate of US dollars against Rupiah, on the value of compensation for terminating the implementation of the KPU/USO Program Internet Service Provision Agreement,

     b. The ownership status of the KPU/USO Program Internet Service Asset as well as the costs incurred and or the condition of the asset being handed over:

     c. Termination of the KPU/USO Program Internet Service Agreement.

V. That APPLICANT has received down payments for the 5 (five) a quo contracts from RESPONDENT and based on the verification of KAP Heliantono & Partners it has been agreed by APPLICANT and RESPONDENT in the amount of Rp. 42,951,796,710 (forty two billion nine hundred fifty one million seven hundred and ninety-six thousand seven hundred and ten rupiah).

VI. That the dispute between APPLICANT and RESPONDENT over the payment for the work of the MPLIK Package 19 Agreement (Exhibit P-01 - T-1) for terms 5-9, has been resolved by the Indonesian National Arbitration Board (BANI) through

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari



the BANI Decision Number: 703/V/ARB- BANI/2015 dated 30 March 2016 (Exhibit P-23 and P60), with Terms 1-4 having no dispute, which will be resolved by BANI Representatives of Surabaya is a dispute on Ters 10-16

VII. That the BPK. I examination report on the Provision of PLIK and MPLIK services at BP3TI of the Directorate General of PPI, Kominfo in Jakarta, is as stated in the letter:

- Number 07/S/V-XVI/01/2014 Concerning the Audit Result Report on the Provision of PLIK and MPLIK Services at BP3TI, the Directorate General of PPI, Ministry of Communication and Information in Jakarta and North Sulawesi Province as well as related agencies dated 3 January 2014

- Number 08/S/V-XVI/01/2014 Regarding the Report on the Results of the Examination of the Provision of PLIK and MPLIK Services at BP3TI, the Directorate General of PPI, Ministry of Communication and Information in Jakarta and North Maluku and related agencies dated 3 January 2014

- Number 0/9S/V-XVI/01/2014 Regarding the Audit Result Report on the Provision of PLIK and MPLIK Services at BP3TI of the Directorate General of PPI, Ministry of Communication and Information in Jakarta and Bangka Belitung Islands and related agencies dated 3 January 2014

- It turned out that what was related to RESPONDENT was only letter No. 08/S/V-XVI/01/2014, PLIK dated 3 January 2014 for the MPLIK package 19.

- In its application letter at BANI Representative Office in Surabaya, APPLICANT did not disclose any BPK RI findings regarding payment of achievements for the provision of MPLIK package 19 services amounting to Rp 15,185,440,612.82 in the posita of its application,

- RESPONDENT in their answers put forward the posita letter B of the BPK RI LHP regarding the work on PLIK and MPLIK and the RESPONDENT financial system by submitting Exhibit T-11 letters, but not submitted as counterclaim requests,

- At the request of the Arbitral Council for clarification of the above matter, APPLICANT and RESPONDENT submit additional conclusions on 20 July 2017 and 21 July 2017, respectively,

VIII. RESPONDENT is a Public Service Agency (BLU) based on the provisions in article 3 paragraph 1 and paragraph 2 PP No. 23/2005 Jo PP 74/2012 concerning Financial Management of Public Service Agency;
Financial Development of Central Government Public Service Agencies is carried out by the Minister of Finance and technical guidance is carried out by the Minister who is responsible for the relevant Government sector (Article 68 paragraph 3 of Law No.1 of 2004 on State Treasury):

All use of the RESPONDENT Budget is subject to the provisions or policies of the Minister of Communication and Information of the Republic of Indonesia as the Technical Advisor and the Ministry of Finance of the Republic of Indonesia as the Financial Advisor of the RESPONDENT,

IX. The DPR RI on the KPU/USO Program Internet Service Provision Budget is marked with an asterisk (*), blocking it, causing the entire KPU/USO Program Internet Service Provision Budget to be temporarily suspended:

- With the MK decision No. 35/PUU/XI/2013 dated 22 May 2016, the DPR RI is not authorized to provide an asterisk



I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

(*).

- Requirements for opening the block include submitting a Business Plan and Budget (RBA) document.

- On 26 March 2015, RBA of RESPONDENT was signed/endorsed by the Minister of Communication and Information of the Republic of Indonesia.

- On 14 April 2015, the Public Service Agency Budget Implementation List (DIPA BLU) excerpt for Fiscal Year 2015 was approved by the Ministry of Finance.

Considering that based on the provisions of Article 56 of Law 30/1999 (regarding Arbitration and Alternative Dispute Resolution) the Arbitral Council makes decisions based on legal provisions or based on fairness and appropriateness; Considering that in the APPLICANT application letter and RESPONDENT's response, both parties stated that if the Arbitral Council has a different opinion, they ask for the fairest decision possible (aequo et bono),

Considering that the Arbitration Council based on the agreement of the two parties mentioned above will use its authority to decide APPLICANT and RESPONDENT disputes based on the provisions of Article 15 point 3 of the BANI Rules and Procedures;

Considering APPLICANT on 25 July 2017 sent an email to the secretariat of BANI Surabaya in the form of letter no. 25.A/RMI-RRY/DIR/VII/2017 regarding Supplement to Additional Conclusions from APPLICANT in case No. 30/ARB/BANI-SBY /III/2017;

Considering that at the hearing on July 14 2017 the examination in the a quo case in the trial on that date was declared closed, and APPLICANT and RESPONDENT were given the opportunity to submit additional conclusions no later than 21 July 2017;

Considering, therefore, the Supplement to the Additional Conclusion from APPLICANT dated 25 July 2017 cannot be accepted because it will trigger a RESPONDENT protest, and according to the trial minutes dated 21 July 2017 the decision in the a quo case will still be pronounced on 27 July 2017;

Considering from the legal facts as stated in point I above, it is proven that APPLICANT and RESPONDENT are bound by the KPU/USO Program Internet Service Provision Cooperation Agreement;

Considering that the agreement has been made legally, because it is not displayed that the agreement was given due to mistake, coercion, or fraud as stated in article 1321 of the Civil Code, and therefore the letters of the a quo Agreement are legally valid;

Considering that RESPONDENT terminated the Cooperation Agreement on the Provision of Internet Services for the KPU/USO Program mentioned above on the grounds of a forceful situation, namely because the Minister of Finance refused to extend the multi-year Permit contract since January 2015 due to an asterisk (*) on the KPU/USO budget by the

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari       HP 05129931866

DPR RI, by mentioning Article 91 paragraph 1 of PERPRES 54 of 2010: that Article 91 paragraph 2 of PERPRES 54/2010 states that which can be classified as force majeure in the goods/services procurement contract include:

    a. Natural disasters

    b. Non-natural disaster

    c. Social disaster

    d. Strike

    e. Fire and/or

    f. Other industrial disruptions as stated in the Joint Decree of the minister of finance and related technical ministers;

Considering the General Conditions of Contract, item 2.6 concerning force majeure also states that which is classified as force majeure;

Considering that the refusal of the Ministry of Finance to extend the multi-year permit contract was due to the signing of an asterisk (*) on the KPU/USO Program Internet Service Provision Budget by the DPR RO, not including those classified as force majeure either in PERPRES 54/2010 or in the Terms of Conditions. General Contract item 2.6.1;

Considering that from the above considerations, the RESPONDENT argument regarding force majeure, must be set aside;

Considering that APPLICANT has carried out the achievements of the Agreement as stated in the legal facts point II above, but for the achievement referred to, RESPONDENT has not made any payment (discontinuing the KPU/USO Program Internet Service Provision Budget, vide Exhibit P-25, P-26, P-27 , P-30, P-31, and P-32);

Considering the opinion of the RESPONDENT in its conclusion at number 26 ("with a change in the RESPONDENT's organizational structure, the RESPONDENT's authority to perform reconciliation has been revoked and therefore RESPONDENT can no longer carry out the reconciliation process of invoices for Service Providers in casu APPLICANT"), must be rejected because the KPU/USO Program Internet Service Provision Budget Agreement recognizes the Center for Providing and Management of Telecommunication and Information Development as the party, not the personal director of BP3TI;

And therefore with the issuance of the order of the Minister of Communication and Information Technology No. 418/M.KOMINFO/KP.01.06/05/2015 concerning Appointment of the Acting Director of BP3TI does not result in RESPONDENT being unable to carry out the reconciliation process of the APPLICANT payables;

Considering even though the RESPONDENT was in good faith by making various efforts to open the budget blockage/asterisk (*) as evidenced by the letters in the Exhibit T-16 letter, but formally/legally, the work termination of the entire operation of the Internet Service Provision Program Budget KPU/USO has violated the APPLICANT and RESPONDENT agreement as stated in the a quo contract, in other words RESPONDENT has committed default and is

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari 05129931866

therefore obliged to make payments for the implementation of the work to provide budget for the provision of internet services for the KPU/USO a quo program:

Considering that Petitum No. 2 deserves to be granted, stating that RESPONDENT has made a default for not continuing the implementation of the KPU/USO Program Internet Service Agreement which consists of:

2.1. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Packages 19 (nineteen) in Maluku & North Maluku Number 35/PKS/KOMINFO/12/2010 dated 22 December 2010 and its amendments;

2.2. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Package 1 (one) in Nangroe Aceh Darussalam Province Number 10/PKS/KOMINFO/12/2011 dated 5 December 2011 and its amendments;

2.3. Agreement Letter for the Provision of Public Access Wifi Internet Services KPU/USO Regency (JALIN-KPU/USO) Work Package 2 (Two) Number 31/PKS/KOMINFO/12/2011 dated 30 December 2011 and its amendments;

2.4. Agreement Letter for the Provision of Public Access Wifi Internet Services KPU/USO Regency (JALIN-KPU/USO) Work Package 7 (Seven) Number 36/PKS/KOMINFO/12/2011 dated 30 December 2011 and its amendments;

2.5. Agreement Letter for Provision of Rural Telecommunication and Informatics Access Services KPU/USO (Desa Pinter Upgrading) Work Package 5 (Five) in Maluku Province Number 42/PKS/KOMINFO/1/2012 dated 5 January 2012 and its amendments;

Considering as stated in the legal facts point VII, RESPONDENT is a Public Service Agency (BLU): financial coaching of the Central Government Public Service Agency (BLU) is carried out by the Minister of Finance of the Republic of Indonesia and technical guidance is carried out by the Minister of Communication and Information of the Republic of Indonesia;

Considering as stated in the legal facts point VIII on 28 March 2015, the Business Plan and Budget (RBA) from RESPONDENT was signed/endorsed by the Minister of Communication and Information Technology of the Republic of Indonesia on 14 April 2015, the Public Service Agency Budget Implementation List (DIPA BLU) excerpt 2015 was approved by the Minister of Finance of the Republic of Indonesia;

Considering that with the approval of the unblocking/asterisk (*), the reconciliation of the work performance of the APPLICANT In casu Service Provider can be carried out;

Considering that from the legal facts point VIII a quo, the Ministry of Communication and Information of the

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian besthit

Republic of Indonesia is also responsible for public services carried out by RESPONDENT, in this case represented by the Commitment Making Officer of the Telecommunication and Information Center (BTIP) of the Directorate General of Post and Telecommunications

Considering from the legal facts point IV, namely that APPLICANT and RESPONDENT agreed to appoint KAP Heliantono & Partners to verify RESPONDENT's obligations to make payments for the implementation of the KPU/USO Program Internet Service Provision Budget, with the results: KAP Heliantono & Partners final report dated 28 November 2016;

Considering from the legal facts point IV, APPLICANT and RESPONDENT conducted deliberations to settle APPLICANT's demands for the payment of the KPU/USO Program Internet Service Provision Budget since the first deliberation on 18 August 2016 until the 8th deliberation on 8 December 2016 by agreeing to the recapitulation of the agreement on 8 December 2016 (table 5) as follows;

| DESCRIPTION | KPU/USO RADNET PROGRAM | | | | | Radnet & BP3TI Agreement |
| --- | --- | --- | --- | --- | --- | --- |
| | MPLIK Package 1 | JAUN WIFI 2 | JAUN WIFI 7 | DESA PINTER 5 | MPLIK 19 | |
| CONTRACT VALUE*) | 98,113,690,157 | 52,627,130,582 | 54,486,288,331 | 48,089,788,613 | 61,662,944,857 | 314,979,842,540 |
| **A** | | | | | | |
| **I** Construction Cost Reimbursement | | | | | | |
| 1. Direct Costs Incurred | 70,521,406,953 | 39,392,707,468 | 41,264,314,657 | 39,639,078,726 | 48,273,183,388 | 239,090,691,191 |
| 2. Direct Costs Payable | 5,817,894,000 | 2,474,206,757 | 3,202,999,951 | 299,760,000 | 9,792,340,354 | 21,587,201,062 |
| 3. Adjustment and Verification Result Findings | 741,517,687 | 235,194,820 | 274,549,695 | 416,169,032 | (6,266,797,000) | (4,599,365,767) |
| 4. KAP costs (50%) (50%) by BP3TI | 33,000,000 | 33,000,000 | 33,000,000 | 33,000,000 | 33,000,000 | 165,000,000 |
| | | | | | | |
| **II** Reduction Factors for Development Cost Reimbursement | | | | | | |
| 1. Advance Received | (13,379,139,567) | (7,176,426,898) | (7,429,948,409) | (6,557,698,447) | (8,408,583,390) | (42,951,796,710) |
| 2. Term Payment Received | | - | - | | (26,802,359,555) | (26,802,359,555) |
| TOTAL A (before VAT) | 63,734,679,073 | 34,958,682,148 | 37,344,915,894 | 33,830,309,310 | 16,620,783,798 | 186,489,370,222 |
| | | | | | | |
| **B** | | | | | | |
| **1** Reasonable profit | | | | | - | - |
| **II** Potential Losses | - | - | - | - | - | - |
| TOTAL B (before VAT) | - | - | - | - | - | - |
| | | | | | | |
| TOTAL (A+B) before VAT | 63,734,679,073 | 34,958,682,148 | 37,344,915,894 | 33,830,309,310 | 16,620,783,798 | 186,489,370,222 |
| VAT | 6,373,467,907 | 3,495,868,215 | 3,734,491,589 | 3,383,030,931 | 1,662,078,380 | 18,648,937,022 |
| TOTAL (A+B) after VAT | 70,108,146,980 | 38,454,550,362 | 41,079,407,483 | 37,213,340,241 | 18,282,862,178 | 205,138,307,244 |

Considering that the BPK RI findings regarding the overpaid work performance of MPLIK package 19 in the LHP BPK RI for the provision of MPLIK services at BP3TI are listed in the BPK RI Letter No. 08/S/V-XVI/01/2014, PLIK dated 3 January 2014, there was an overpayment for MPLIK's work performance of IDR 23.53 million;

Considering that on the findings of BPK RI regarding the overpayment of MPLIK's work performance package 19 a quo, it has been considered in the BANI decision No. 703/V/BANI-ARB/2015 dated 30 March 2016 over the dispute between

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

APPLICANT and RESPONDENT regarding the payment of terms 5 to 9 of the Agreement for the Provision of Subdistrict Internet Service Center KPU/USO which is mobile work package 19 in Maluku and North Maluku No. 35/PKS/KOMINFO/12/2010 dated 22 December 2010 and its amendments;

Considering the BPK RI findings regarding the payment for the MPLIK package 19 achievement of Rp. 15,185,440,612.82 which were declared unable to be accounted for, APPLICANT in additional conclusions on pages 14-15, at:

- Item 17 f:     that RESPONDENT in the examination of the MPLIK case package 19 at BANI Jakarta with case number 703/V/BANI-ARB/2015 has submitted an LHP PDTT BPK evidence in the form of an attachment document LHP BPK RI no. 302/HP/XVI/12/2013 dated 30 December 2013 to be considered by the arbitral tribunal in Jakarta.

- Point 17 h:     that therefore the petitum for reimbursement of development costs in the form of compensation for the implementation of the KPU/USO Program Internet Service work submitted by APPLICANT in this case is **Rp. 205,138,307,244.** (two hundred five billion one hundred thirty eight million three hundred seven thousand two hundred and forty-four rupiah) **has calculated/reduced** the deduction factor, namely the payment that has been received by APPLICANT from terms 1 to term 9, which includes the findings of BPK RI in the amount of **Rp 15,185,440,612.82** (fifteen billion one hundred eighty five million four hundred forty thousand six hundred twelve point eighty two rupiah) as well as recommendations from the Audit Board of Republic of Indonesia in the form of an obligation to return **Rp. 23,530,000** (twenty three million five hundred thirty thousand rupiah).

Considering that RESPONDENT in the additional conclusion on page 4: that on BPK RI findings on the payment of RESPONDENT to APPLICANT in the amount of **Rp. 15,185,440,612.82** (fifteen billion one hundred eighty five million four hundred forty thousand six hundred twelve point eighty two rupiah) which cannot be accounted for due to the invalidation of the raw data used as the basis for reconciling the Service Provider's NOC data which has not yet reached the Client's PC. Regarding the findings of BPK RI regarding the irresponsible RESPONDENT payment, BPK RI recommended RESPONDENT to temporarily stop MPLIK payments using modem/server data locks until testing by the Inspectorate General of Communications and Information Technology.

Based on this, RESPONDENT does not continue to pay work performance in accordance with the BPK recommendations contained on page 73 of BPK's PDTT LHP.

Considering from Exhibit P-60 (BANI Decision No. 703/V/BANI-ARB/2015 dated 30 March 2016), it does not appear that there is a posita in the APPLICANT request which states that BPK RI findings amount to **Rp. 15,185,440,612.82** (fifteen billion one hundred eighty five million four hundred forty thousand six hundred and twelve point eighty-two rupiah) a quo:

Meanwhile, RESPONDENT in the answer to point 30, among others, postulates:

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari 06129931866

- The raw data submitted in the BA Reconciliation which is the basis for payment is not in accordance with MPLIK's actual operational conditions.

- The payment for the MPLIK package 19 to the BPK RI examination is **Rp. 15,185,440,612.82.**

Considering that the BANI Jakarta Arbitration Council in making a decision was based on, among other things, the verification of KAP Drs. Albert Silalahi & Partners agreed by APPLICANT/RESPONDENT as independent verifiers,

Considering that as long as it is read in BANI Decision No. 703/V/ARB-BANI/2015 a quo does not find the verification results of the KAP Drs. Albert Silalahi & Partners regarding BPK RI findings regarding the payment of MPLIK's achievement package 19 worth Rp. **15,185,440,612.82;**

Considering it is also illegible that this matter was explicitly considered by the Arbitration Council in the BANI Decision No. 703/V/ARB-BANI/2015 dated 30 March 2016,

Considering based on the above, it is open for the parties to dispute the findings of BPK RI in the amount of **Rp. 15,185,440,612.82,** at a separate Arbitration Hearing, because as stated in the legal facts point VII regarding this matter was not made posita by APPLICANT in its application, and RESPONDENT did not also submitted a response to the a quo BPK RI findings;

Considering that based on the above considerations by taking into account the recapitulation of the APPLICANT RESPONDENT agreement dated December 8, 2016 (table 5) which is based on the verification results of KAP Heliantono & Partners, petitum 3.1 can be granted, by sentencing the RESPONDENT to pay APPLICANT for the Provision of Internet Service for the KPU/USO Program amounting **to Rp. 205,138,307,244. (two hundred five billion one hundred and thirty-eight million three hundred seven thousand two hundred forty-four rupiah);**

Considering that legally the main institution of RESPONDENT, namely the Ministry of Communication and Information of the Republic of Indonesia and the Minister of Finance of the Republic of Indonesia are bound by this Arbitration Award;

Considering that the legal facts in point V APPLICANT and RESPONDENT agree to eliminate claims regarding a reasonable profit on investment and potential losses, it is binding for APPLICANT and RESPONDENT based on the provisions of article 1338 of the Civil Code, and according to the Arbitration Council the agreement is appropriate because not only APPLICANT has experienced loss and missed opportunity of a reasonable potential gain on investment, RESPONDENT also experiences losses because it cannot perform its function as a Public Service Agency (BLU) through the KPU/USO Program Internet Service Project;

Considering that APPLICANT and RESPONDENT agreed to eliminate claims regarding a reasonable profit and potential losses as listed in table 5 (Recapitulation of Agreement on 8 December 2016);

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

Considering from the legal facts in point IV, it can be concluded that interest and fines as well as the difference in the exchange rate of the US Dollar against the Rupiah are not included in the omitted agreement as referred to in table 5 (Recapitulation of the Agreement on 8 December 2016);

Considering that it is true that the credit agreement between APPLICANT and PT Bank Pembangunan Daerah Jawa Barat (Bank BJB), likewise the credit agreement between APPLICANT and PT Hawlett Packard Finance Indonesia (HPFI) for the payment of the KPU/USO Program Provisioning Works based on the provisions of Article 1340 of the Civil Code only applies between the parties that made it: APPLICANT with PT Bank Pembangunan Daerah Jawa Barat (Bank BJB) and APPLICANT with PT Hawlett Packard Finance Indonesia (HPFI);

Considering as has been considered above that RESPONDENT has been declared to have defaulted on the KPU/USO Program Internet Service Agreement, by stopping payments for the a quo Agreement;

Considering that the act of RESPONDENT who does not carry out the agreement to submit the achievement in the form of payment for the work performance of APPLICANT in the KPU/USO Program Service Provision Agreement, is an act of default, not an act against the law as stated in the provisions of Article 1365 of the Civil Code whose legal relationship is not born due to an agreement of both parties but for the sake of law;

Considering that for RESPONDENT's default, namely not making payments for the KPU/USO Program Internet Service Agreement resulted in APPLICANT being unable to pay debts to PT Bank Pembangunan Daerah Jawa Barat (Bank BJB) and also to PT Hawlett Packard Finance Indonesia (HPFI) for the payments using the US dollar currency, with the result of swelling interest payments and penalties as well as a decline in the value of the Rupiah Exchange Rate against the US dollar currency;

Considering that it is sufficient to fulfill a sense of justice if based on ex aequo et bono to charge the RESPONDENT 1/2 (half) of the obligation of APPLICANT to pay interest and fines to PT Bank Pembangunan Daerah Jawa Barat (Bank BJB), likewise impose 1/2 (half) difference of the US Dollar exchange rate against the Rupiah currency on the interest on APPLICANT's debt to PT Hawlett Packard Finance (HPFI);

Considering the above legal considerations are analogous to the legal considerations of the Supreme Court Decision No. 440 K/SIP/1953 and No. 38 K/SIP/1975, as contained in the compilation book/legal abstracts of the Supreme Court Decision by Budiarto, SH, Publisher of the Indonesian Judges Association, first printed April 2000, pages 75 - 79, which contains legal abstracts: *"the risks arising from the decline in the value of money rupiah must be borne by both parties in the same proportion (fifty fifty)* ";

Considering based on the verification results of KAP Helianto & Partners (Exhibit P-47), the interest and fines charged by PT Bank Pembangunan Daerah Jawa Barat (Bank BJB) are IDR 31,484,364,801 (thirty one billion four hundred

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari    SIPP 0512993186S

eighty four million three hundred and sixty four thousand eight hundred and one rupiah);

Considering based on the above considerations, the interest and fines of PT Bank Pembangunan Daerah Jawa Barat (Bank BJB) are charged equally between APPLICANT and RESPONDENT amounting to Rp. 31,484,364,801: 2 = Rp. 15,742,182,401 (fifteen billion seven hundred and forty-two million one hundred eighty two thousand four hundred and one rupiah);

Considering that based on KAP Heliantono & Partners, the difference between the exchange rate of US Dollar against Rupiah in Exhibit P-47 is IDR 9,570,959,566 (Nine billion five hundred seventy million nine hundred and fifty nine thousand five hundred and sixty six rupiah) and the said foreign exchange difference is borne by APPLICANT and RESPONDENT equally: Rp 9,570,959,566: 2 = Rp 4,785,479,783 (four billion seven hundred eighty-five million four hundred seventy nine thousand seven hundred and eighty three rupiah);

Considering petitum 3.2, APPLICANT's demand that RESPONDENT be sentenced to pay interest and fines imposed by West Java Regional Development Bank to APPLICANT in connection with the financing of the KPU/USO Program Provisioning Works, was granted in the amount of Rp. 15,742,182,401 (fifteen billion seven hundred and forty-two million one hundred eighty-two thousand four hundred and one rupiah);

Considering based on the consideration that the difference between the exchange rate of the Dollar against the Rupiah currency is charged to the APPLICANT and RESPONDENT in a balanced manner, then petitum No. 4 was granted in the amount of Rp. 4,785,479,773 (four billion seven hundred eighty-five million four hundred seventy-nine thousand seven hundred and eighty-three rupiah);

Considering it is necessary to consider the asset status of the KPU/USO Project Provisioning Works after payment by RESPONDENT to APPLICANT;

Considering in the agreement letter a quo, the asset status is regulated in article 9 of the General Conditions of Contract after the contract period ends;

Considering that because the implementation of the KPU/USO Project Provision Work a quo was terminated unilaterally by the RESPONDENT and if for the implementation of the KPU/USO Project Provisioning work a payment has been made by the RESPONDENT to APPLICANT, then aeguo et bono and based on the law, the said assets must be submitted to the RESPONDENT;

Considering the petitum compensating for immaterial losses as mentioned in petitum No. 5 must be rejected because it is groundless and without legal basis;

Considering petitum No. 6, was granted by stating the letters of the KPU/USO Program Internet Service Agreement

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

consisting of:

6.1. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Packages 19 (nineteen) in Maluku & North Maluku Number 35/PKS/KOMINFO/12/2010 dated 22 December 2010 and its amendments;

6.2. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Package 1 (one) in Nangroe Aceh Darussalam Province Number 10/PKS/KOMINFO/12/2011 dated 5 December 2011 and its amendments;

6.3. Agreement Letter for Provision of Public Access Wifi Internet Service KPU/USO Regency (JALIN-KPU/USO) Work Package 2 (Two) Number 31/PKS/KOMINFO/12/2011 dated 30 December 2011 and its amendments;

6.4. Agreement Letter for Provision of Public Access Services for Wifi Internet Services for KPU/USO Regency (JALIN-KPU/USO) Work Package 7 (Seven) Number 36/PKS/KOMINFO/12/2011 dated 30 December 2011 and its amendments;

6.5. Agreement Letter for Provision of Rural Telecommunication and Informatics Access Services KPU/USO (Desa Pinter Upgrading) Work Package 5 (Five) in Maluku Province Number 42/PKS/KOMINFO/1/2012 dated 5 January 2012 and its amendments;

ends since this Arbitration Award is pronounced by the Arbitration Council;

Considering that in accordance with the provisions of Article 59 of Law 30/1999 on Arbitration and Alternative Dispute Resolution, no later than 30 days after the decision is pronounced that the original sheet or authentic copy of the Arbitration Award is submitted and registered with the Registrar of the District Court, after the parties are given the opportunity to submit an application to BANI so that the Arbitration Council corrects administrative errors;

Considering that if the decision is implemented voluntarily there is no time limit according to the laws and regulations, but if it cannot be done voluntarily, the following statutory provisions shall take effect: according to the provisions of articles 60 to 64 of Law 30/1999 regarding Arbitration and Alternative Dispute Resolution, the decision is implemented based on the order of the Head of the District Court which is given no later than 30 days after the request for execution is registered at the District Court. Furthermore, an Arbitration Award which has been given an order by the Head of the District Court, shall be implemented in accordance with the provisions on the implementation of the Award which has permanent legal force;

Considering based on the provisions of the aforementioned Legislation, then petitum No. 7, which requests that the RESPONDENT be punished for implementing the decision no later than 14 calendar days after the decision was pronounced, is not based on law and therefore cannot be granted;

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari



Considering that since the petition was granted in the petitum subsidaer section (aequo et bono), the administrative costs, examination fees and arbitration fees were borne by APPLICANT and RESPONDENT each of 1/2 (half) parts;

In view of and taking into account Law 30/1999 regarding Arbitration and Alternative Dispute Resolution, BANI Rules and Procedures and other laws and regulations;

# DECIDES

1. Grants the APPLICANT request on the subsidair petitum section (ex aeguo et bono),

2. Declares that the RESPONDENT has committed default because it did not continue implementation of the KPU/USO Program Internet Service Agreement which consists of:

2.1. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Packages 19 (nineteen) in Maluku & North Maluku Number 35/PKS/KOMINFO/12/2010 dated 22 December 2010 and its amendments;

2.2. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Package 1 (one) in Nangroe Aceh Darussalam Province Number 10/PKS/KOMINFO/1212011 dated 5 December 2011 and its amendments;

2.3. Agreement Letter for Provision of Public Access Wifi Internet Service KPU/USO Regency (JALIN-KPU/USO) Work Package 2 (Two) Number 31/PKS/KOMINFO/12/2011 dated 30 December 2011 and its amendments;

2.4. Agreement Letter for Provision of Public Access Services for Wifi Internet Services for KPU/USO Regency (JALIN-KPU/USO) Work Package 7 (Seven) Number 36/PKS/KOMINFO/12/2011 dated 30 December 2011 and its amendments;

2.5. Agreement Letter for Provision of Rural Telecommunication and Informatics Access Services KPU/USO (Desa Pinter Upgrading) Work Package 5 (Five) in Maluku Province Number 42/PKS/KOMINFO/1/2012 dated 5 January 2012 and its amendments;

3. States the KPU/USO Program Internet Service Provision Agreement:

3.1. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Packages 19 (Nineteen) in Maluku & North Maluku Number 35/PKS/KOMINFO/12/2010 dated 22 December 2010 and its amendments;

3.2. Agreement Letter for Provision of Mobile Internet Access Service Center for KPU/USO Subdistrict (mobile) Work Package 1 (one) in Nangroe Aceh Darussalam Province Number 10/PKS/KOMINFO/12/2011 dated 5 December 2011 and its amendments;

3.3. Agreement Letter for Provision of Public Access Wifi Internet Service KPU/USO Regency (JALIN-KPU/USO) Work Package 2 (Two) Number 31/PKS/KOMINFO/12/2011 dated 30 December 2011 and its amendments;

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

3.4. Agreement Letter for Provision of Public Access Services for Wifi Internet Services for KPU/USO Regency (JALIN-KPU/USO) Work Package 7 (Seven) Number 36/PKS/KOMINFO/12/2011 dated 30 December 2011 and its amendments;

3.5. Agreement Letter for Provision of Rural Telecommunication and Informatics Access Services KPU/USO (Desa Pinter Upgrading) Work Package 5 (Five) in Maluku Province Number 42/PKS/KOMINFO/1/2012 dated 5 January 2012 and its amendments;

ends when this Arbitration Award is pronounced by the Arbitration Council;

4. Sentences the RESPONDENT to pay APPLICANT for the implementation of the Internet Service Work for the KPU/USO Program a quo in the amount of **Rp. 205,138,307,244.** (two hundred five billion one hundred and thirty-eight million three hundred seven thousand two hundred forty-four rupiah);

5. Sentences the RESPONDENT to pay interest charges and fines to PT Bank Pembangunan Daerah Jawa Barat (Bank BJB) in connection with the financing of the KPU/USO Program Internet Service Provision Agreement amounting to Rp. 15,742182,401 (fifteen billion seven hundred forty-two million and hundred and eighty-two thousand four hundred and one rupiah);

6. Sentences the RESPONDENT to pay APPLICANT the difference in the value of the US Dollar exchange rate against the Rupiah currency on the financing of the KPU/USO Program Internet Service Provision in the amount of Rp 4,785,479,783 (four billion seven hundred eighty-five million four hundred seventy nine thousand seven hundred and eighty three rupiah);

7. Declares the Arbitration Award in the a quo case is a decision in the first and last level and has permanent legal force that binds the APPLICANT and RESPONDENT;

8. Rejects other than APPLICANT's request and the rest;

9. Sentences APPLICANT and RESPONDENT to pay the costs of this case each 1/2 (half) parts;

10. Orders the Trial Secretary to register this decision at the Registrar of the South Jakarta District Court within the grace period as stipulated in law,

Thus it was decided and pronounced on Thursday the twenty-seventh of July Year two thousand and seventeen at the office of the Indonesia National Board of Arbitration Board (BANI) Surabaya Office Jalan Ketintang Baru VIII Number 10 Surabaya by Hartini Mochtar Kasran, SH, FCBArb. as Chairman of the Council, as well as Ismet Baswedan, SH, FCBArb, Basoeki, SH, FCBArb., respectively as Members of the Arbitration Council and accompanied by Suhirmanto, SH, as Trial Secretary and attended by APPLICANT's Attorney and RESPONDENT's Attorney:

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari



Members                                          Chair of Arbitration Council


1. Ismet Baswedan,SH,FCBArb                       Hartini Mochtar Kasran, SH.FCBArb


2. Basoeki, SH, FCBArb                            Trial Secretary


                                                       Suhirmanto,SH.


                          A copy of this Decision is in accordance with the original
                          presented to:
                          APPLICANT/Proxy


                          Surabaya, 15 August 2017
                          Indonesia National Board of Arbitration (BANI)
                          Surabaya Office



                          Suhirmanto, SH
                          Head of the Secretariat

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

10. Orders the Trial Secretary to register this decision at the Registrar of the South Jakarta District Court within the grace period as stipulated in law,

Thus it was decided and pronounced on Thursday the twenty-seventh of July Year two thousand and seventeen at the office of the Indonesia National Board of Arbitration (BANI) Surabaya Office Jalan Ketintang Baru VIII Number 10 Surabaya by Hartini Mochtar Kasran, SH, FCBArb. as Chairman of the Council, as well as Ismet Baswedan, SH, FCBArb, Basoeki, SH, FCBArb., respectively as Members of the Arbitration Council and accompanied by Suhirmanto, SH, as Trial Secretary and attended by APPLICANT's Attorney and RESPONDENT's Attorney:

Members

1. Ismet Baswedan,SH,FCBArb

2. Basoeki, SH, FCBArb

Chair of Arbitration Council

Hartini Mochtar Kasran, SH.FCBArb

Trial Secretary

Suhirmanto,SH.

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

INDONESIAN NATIONAL BOARD OF ARBITRATION - SURABAYA OFFICE

Jl. Ketintang Baru VII No. 10, Surabaya Tel. : 031-82874714, 8293486, 8290522 Fax. : 031-8290522 e-mail : banisurabaya1@gmail.com

## DECREE
### No. 81/SK/BANI-SBY/V/2017
### Regarding

## COMPOSITION OF THE ARBITRATION COUNCIL AND THE TRIAL SECRETARY
### Case No.30/ARB/BANI-SBY/III/2017

### Chair of the Indonesia National Board of Arbitration (BANI)
### Surabaya Office

**Considering**  : 1. **that APPLICANT/PT. RAHAJASA MEDIA INTERNET,** located in Jakarta, address at Graha Darnelis 2nd floor Jl. Amil No. 7 Pejaten Barat, Jakarta, the branch office in Surabaya is located at Plaza BRI, 8th floor suite 803, Jl. Basuki Rahmat No. 122, Surabaya, the branch office in Bandung is located at Bumi Bina Usaha Building, 3rd floor, suite 301b, Jl. Asia Africa No. 141-149, Bandung, in this case represented by **BRM Roy Rahajasa Yamin as Director,** has **appointed Ismet Baswedan, SH, FCBArb** as the Arbitrator chosen by the Applicant who has submitted his willingness dated 5 April 2017;

2. that **RESPONDENT/Telecommunication and Informatics Financing Provider and Management Center of the Directorate General of Post and Information Administration of the Ministry of Communication and Information Technology R.I. ("BP3TI") d/h Rural Telecommunication and Informatics Center, Directorate General of Post and Telecommunication, Ministry of Communication and Information, R.I.,** address at Wisma Kodel Building, 6th floor, Jalan HR Rasuna Said Kav B4, Jakarta gg. Ministry of Communication and Informatics R.I. in this case represented by **Anang Latif as the President Director** who has appointed **Basoeki, SH, FCBarb,** as the RESPONDENT's chosen Arbitrator who has submitted his willingness on 17 April 2017;

3. that the two Arbitrators have subsequently agreed to appoint **Mrs. Hartini Mochtar, SH, FCBArb.** as Chair of the Arbitration Council, which has stated her willingness by letter dated 18 April 2017;

4. that for the Arbitration Council, it is necessary to appoint a Trial Secretary **Suhirmanto, SH**. who will accompany the Arbitration Council;

5. that therefore it is necessary to issue a Decree on the Composition of the Arbitration Council for case

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

No.30/ARB/BANI-SBY/III/2017 as arranged below:

**In view of**        : **1. Law No. 30 of 1999**

                   **2. BANI Rules of Procedure**

## **DECIDES:**

1. To stipulate a Decree on the Composition of the Arbitral Tribunal for case No. 30/ARB/BANI-SBY/III/2017 are as follows:

a. Chair                         :        **Mrs. Hartini Mochtar Kasran,SH,FCBArb.**

                                  Jl. Ketintang Baru 1I/1-3 Surabaya

b. Member                      :        **Ismet Baswedan,SH,FCBArb**

                                  Jl. Vila Kalijudan Indah I/11, Blok A/2 Surabaya

c. Member                      :        **Basoeki, SH, FCBArb.**

                                  Jl. Rungkut Mapan Tengah III/CCO3 Surabaya

d. Trial Secretary             :        **Suhirmanto,SH**

                                  Jl. Perlis Utara No. 12 Surabaya

2. This Decree will be corrected if it turns out that there are deficiencies in the future and is valid from the date of stipulation,

                                         Stipulated in: Surabaya

                                         On Tuesday

                                         Date: 16 May 2017

                                         _____

                                         Indonesia National Board of Arbitration (BANI)

                                         Surabaya Office

                                         Hj. Hartini Mochtar Kasran, SH,FCBArb.

                                         Chair

I hereby swear that I have translated this document from its original source in Bahasa Indonesia to English truthfully and in full pursuant to the power vested in me by the Decree of the Governor of DKI Jakarta Province No. 2042/2005.

Jakarta, December 04, 2020

Dian Lestari

